[No. 3,146.]

# THE PRESIDENT AND TRUSTEES OF THE CITY OF SAN DIEGO v. THE SAN DIEGO AND LOS ANGELES RAILROAD COMPANY.

ACT AUTHORIZING A CITY TO CONVEY ITS LANDS.—An Act of the Legislature authorizing and empowering the Board in which the corporate authority of a city is vested, to convey to a railroad company "not to exceed five thousand acres of the land of the city, or such parcels thereof as they may deem advisable, and upon such terms and conditions as they may determine," even if mandatory, so far as the act of conveyance is concerned, vests the Board with discretionary power as to the quantity to be conveyed, and the terms of the conveyance.

DUTY OF OFFICER OF A CITY INTRUSTED WITH CONVEYANCE OF ITS LANDS.—If an Act of the Legislature, authorizing the Board exercising the corporate authority of a city to convey its lands to a corporation, vests the Board with any discretion in the matter, a member of such Board, who is a stockholder or Director in the corporation, cannot act officially in the Board in relation to the matter, or in making the conveyance, and if he does, and his vote or signature to the deed was requisite to complete the conveyance, the deed will be set aside as a cloud on the title.

DUTY OF TRUSTEE AS TO TRUST PROPERTY.—The Board in which the corporate authority of a city is vested, is intrusted with its property in a fiduciary capacity, and its members cannot bargain with reference to it, with a corporation in which they hold stock.

MAJORITY OF BOARD MAY EXERCISE ITS AUTHORITY.—If an Act of the Legislature authorizes the Board exercising the corporate authority of a city to convey its lands, a majority of the members of such Board may make the conveyance.

APPEAL from the District Court of the Seventeenth Judicial District, San Diego County.

The Court below denied the prayer of the complaint, and the plaintiff appealed..

The other facts are stated in the opinion.

*C. P. Taggart* and *A. Brunson,* for Appellant.

The deed in question is so defective in its execution as to render it void, and cast a cloud upon the plaintiff's title to the lands therein described, which a Court of equity ought,

upon application, to remove. By reference to the Act, it will be seen that the authority to donate and convey is to " The President and Trustees " of the City of San Diego, and that " such donation and conveyance of all or any of said lands made as aforesaid," etc., *i. e.*, made by the " President and Trustees." The deed in question is not made by the President and Trustees, but by two Trustees, the President refusing to join. The trust was joint, and required a joint execution.

When a corporation relies upon a grant of power from the Legislature for authority to do an act, it is as much restricted to the mode prescribed by the statute for its exercise as to the thing allowed to be done. (*Farmer's Loan and Trust Co.* v. *Carroll*, 5 Barb. 649.) The defendants being a body corporate, the general and invariable rule is, that such body can act only in the mode prescribed by the law creating it. (*Beatty* v. *Marine Ins. Co.*, 2 Johns. 114.) This last case was where the President and assistants, and not less than four of the Directors, were authorized, by a plurality of vote, to perform certain acts. The President and assistants assumed to act without evidence of the presence of any of the Directors, they having a plurality of such votes if all were present ; and the Court held the execution of the power insufficient. There must be a compliance with the letter of the statute, since it furnishes all the authority given to act, and measures the length and breadth of the action, and directs the manner. (See, also, *Dawes* v. *N. R. Ins. Co.*, 7 Cow. 465; *Ridgway* v. *Farmers' Bank*, 12 Serg. & R. 256.) Trustees have all equal power, interest, and authority with respect to the trust estate. As a general rule, therefore, they cannot act separately. (Hill on Trustees, 305–307 ; *Ridgley* v. *Johnson*, 11 Barb. 527; *Sinclair* v. *Jackson*, 8 Cow. 543.)

At the same time that Sherman executed this deed as one of the Trustees, conveying land from himself in his

official capacity, he owned ten thousand dollars of the stock of this railroad company, defendant, and was a Director of the company, receiving the conveyance to himself, not only for the company, but for his own use and benefit. He stood as the representative and agent of conflicting interests. He could legally act for neither, without first severing his relations with the other. He was directly interested in the transaction, so much so that under the common law he would have been excluded from the witness stand, in all cases affecting the rights of respondent. (1 Greenleaf on Evid., Sec. 333.) This rule extends to the members of all corporations having a common fund, distributable among the members, and in which they, therefore, have a private interest; the principle of exclusion applying to all cases where that private interest would be affected. (Note 4 to Sec. 333, 1 Gr. on Evid.; 1 Redfield on Railways, 108, 110.) And it is by no means necessary, in cases of this sort, that the agent should have made any advantage by the bargain. Whether he has so or not, the bargain is equally without any obligation to bind the principal. (Story on Agency, Sec. 210.)

So a Trustee cannot ordinarily become the purchaser of the estate of his *cestui que trust.* And it will make no difference whether he is sole trustee or joined with others in the trust. (Story on Agency, Sec. 211.) A trustee for sale is disabled from purchasing the trust property, whether the purchase be made in the trustee's own name or in the name of any other person for him, or for his benefit. He who undertakes to act for another, in any matter, cannot, in the same matter, act for himself. (Lewvin on Trustees, 460; Hill on Trustees, 222; *Michoud* v. *Girod,* 4 How. U. S. 554.)

In the case of the *Cumberland Coal and Iron Co.* v. *Sherman,* 30 Barb. 568, this question was examined at great length, and a digest of the law given, amounting to about this: First—That it may be considered a settled law, that

all trustees, as well public as private, are incapable of purchasing the trust property for their own use. Second—That a trustee cannot contract with himself, or with several trustees, of which he is one, without having his contract liable to be set aside in any reasonable time, if his *cestui que trust* chooses to say he is not satisfied with it. We especially invite attention to this case, from which it appears that in New York, as in California, the Sherman family are disposed to loose sight of those great landmarks of public policy, in accordance with which the law conclusively presumes interest; and the Courts of that State° have been successfully invoked in aid of the injured party.

*Levi Chase,* for Respondent.

Appellant makes the point that "the trust was joint and required joint action."

The cases cited by appellant have no application to the case at bar. There the authority was given to three distinct bodies or sets of officers—that is, "The President," "Assistants," "and not less than four Directors." The President and Assistants assumed to act without the presence of any of the Directors. The law under which they acted requiring the presence and participation of not less than four of them, their acts were necessarily void. We have seen that the authority in this case was given to a corporate body created by statute and entitled "The President and Trustees of the City of San Diego." (Stats. 1852, p. 225.) By this title alone have they corporate existence. By this title they are addressed in all laws referring to them. This authority to convey was given to this body corporate, to these officers in their official capacity. The act of a majority of them was the act of all, or a corporate act. This proposition is so well settled by authority that it seems a waste of time to discuss it, but if the Court desires to refer to authorities, we cite

Angel & Ames on Corporations, 166, 499; Tiff. & B. 540; 32 Cal. 651, 652, 654.

Mr. Hill, in his valuable work on Trustees, p. 307, says: "Where a power is   *   *   *   given to several persons expressly by name, and to them only, all individuals named must join in the exercising it.   But it is otherwise where the power is not strictly personal, but is annexed to the office of Trustees."

Counsel make the point that Sherman was disqualified to act by reason of his interest as stockholder in the railroad company.   The authorities cited by counsel upon this point are not at all applicable to this case.   Sherman holds a very different relation in these proceedings from that of an ordinary Trustee, holding and disposing of the property of his *cestui que trust* with full discretion.   He is neither vendor nor vendee in the transaction; he but obeys the mandate of the Legislature, and executes a legislative grant.   It was but a dry trust.

The Act in question "authorized and empowered" these officers to make this conveyance.   The act to be done was in legal judgment for a public benefit, and the law was mandatory in its requirements.   Sherman could have been compelled by mandamus to execute this conveyance.   (3 Hill, 615; Smith's Com. 727; *Napa Railroad Co.* v. *Napa County*, 30 Cal. 436, and cases there referred to.)

In the case of *Mason* v. *Fearson*, 9 H. 524, the Court say: "What public corporation officers are empowered to do for others, which is beneficial to them to have done, ought to be done."

Sherman, as a stockholder in this railroad company, took no title to this land; neither did he have such a direct certain interest as would affect his right to act in the matter. His interest was remote and contingent; not in the land, but only in the ultimate net earnings of the road after it was built.   (*Gibson* v. *Mobile, etc. R. R. Co.*, 36 Ala. 410.)

By the Court, Belcher, J.:

This action is brought for the purpose of having a deed, executed by two of the Trustees of the City of San Diego to the defendant, declared void and canceled as a cloud on the plaintiff's title.

The deed was made under the supposed authority of an Act of the Legislature, approved April 2d, 1870 (Stats. 1869–70, p. 696), authorizing and empowering the President and Trustees of the City of San Diego to donate and convey to the San Diego and Los Angeles Railroad Company "not to exceed five thousand acres of the pueblo lands of said city, or such pieces or parcels thereof as they may deem advisable, and upon such terms and conditions as they may determine."

At the time of the passage of the Act and of the execution of the deed the corporate authority of the city was vested in a Board of three Trustees, composed of McCoy, Estudillo, and Sherman.

On the 5th of May, 1870, and on the last day of the official life of Estudillo and Sherman as members of the Board, the Trustees met, and by the vote of Estudillo and Sherman in the affirmative, and McCoy in the negative, passed the following resolution:

*Resolved,* By the President and Trustees, that five thousand acres of land be and is hereby granted to the San Diego and Los Angeles Railroad Company, as per Act of the Legislature, passed and approved April 2d, 1870, and that a deed be given to the said railroad company upon the conditions of said Act.

No land having yet been selected to be conveyed in pursuance of the resolution, and McCoy and Sherman refusing to participate in making the selections—the former because he was opposed to the grant, and the latter on account of his

relations with the railroad company—Estudillo, in the office of the Board, proceeded to select ninety different parcels, containing in the aggregate five thousand acres. He and Sherman then, within an hour or an hour and a half after the passage of the resolution, executed, acknowledged, and delivered to the railroad company a deed for the land so selected. At this time Sherman was an owner of stock in the railroad company to the amount of ten thousand dollars, and was one of its Directors.

We do not think this deed can be upheld. If, as the Court held in *The Napa Valley Railroad Company* v. *The Board of Supervisors of Napa County*, 30 Cal. 435, the words "authorized and empowered," as used in the Act, are mandatory, still the command was not to donate and convey five thousand acres, much less any particular five thousand acres, but such pieces or parcels of land, not exceeding in the aggregate five thousand acres, as the Trustees might deem advisable, and upon such terms and conditions as they might determine to be for the best interest of the city. While they were commanded to act in the premises, it was left to them to determine what and how much land, within the limit named, should be conveyed, and upon what terms. A conveyance of two parcels of ten or five acres each would have met all the requirements of the Act. As the officers of the city, they were commanded to do only what in their judgment would most promote the city's interests.

We do not doubt that a majority of the Trustees might execute the power, but the question is, whether Sherman, who was a stockholder and Director of the railroad company, could be one of that majority. When he entered upon the duties of a Trustee, his relations to the city became those of an agent to his principal, or of a trustee to his *cestui que trust*, and while holding the office he could do nothing inconsistent with those relations. This is clear upon principle, and rests upon abundant authority.

The general principle is, that no man can faithfully serve two masters, whose interests are or may be in conflict. The law, therefore, will not permit one who acts in a fiduciary capacity to deal with himself in his individual capacity. "It may be regarded," says Parsons, "as a prevailing principle of the law, that an agent must not put himself, during his agency, in a position which is adverse to that of his principal. For even if the honesty of the agent is unquestioned, and if his impartiality between his own interest and his principal's might be relied upon, yet the principal has in fact bargained for the exercise of all the skill, ability, and industry of the agent, and he is entitled to demand the exertion of all this in his own favor." (1 Pars. on Cont. 74.) This principle has found expression in a large number of cases involving a great variety of circumstances. And it applies equally, whether one deals with himself, acting as sole trustee ; or with a Board of Trustees, of which he is a member; or with the Directors of a corporation of whom he is one.

Thus in *Dobson* v. *Racey*, 3 Sandf. Ch. R. 62, Dobson, being the owner of certain real estate, mortgaged it to Racey, and then executed a power of attorney to him, authorizing him to sell and convey the premises in such manner as he might deem proper; and out of the proceeds of the sale, after paying the mortgage debt, to pay over the surplus to the wife of Dobson. Dobson went abroad and died. Shortly after Dobson left, Racey, by virtue of the power of attorney, conveyed the premises to one Harrison, who, without paying, or agreeing to pay, anything therefor, two days thereafter reconveyed to Racey. Racey satisfied the mortgage, and paid one hundred dollars to the widow of Dobson. The action was commenced by the heirs of Dobson, claiming that the sale to Harrison was inoperative and void. The

Court, after declaring that it is now a settled rule, both in England and in this country, that no party can be permitted to purchase an interest when he has a duty to perform which is inconsistent with his character of purchaser, says: "The law declares the sale unwarrantable, on grounds of public policy, irrespective of any proof of injury or intentional wrong." (See, also, *Boyd* v. *Blankman*, 29 Cal. 19.)

In *Pickett* v. *School District No.* 1, *etc.*, 25 Wis. 552, the plaintiff, who was the Trustee of a school district, entered into a contract with the other two Trustees to build for the district a school house. The stipulated price not being paid, he brought his action on the contract. The Court said: "We think there is one fatal objection to the plaintiff's right to maintain this action, which renders it unnecessary to consider any of the other questions discussed. That is, that inasmuch as it appears that the plaintiff was himself the Director of the district at the time the contract was let, and took part as such in the proceedings to let it, it was against public policy to allow him, while holding that fiduciary relation to the district, to place himself in an antagonistic position, and obtain the contract for himself, from the Board of which he was a member."

In *Cumberland Coal Company* v. *Sherman*, 30 Barb. 553, the President and Secretary, in pursuance of a vote of the Directors of the corporation, sold and conveyed to the defendant, who was one of the Directors, a large tract of land. The action was commenced to have the deed declared void and canceled. After a very elaborate and searching review of the authorities the Court came to the conclusion that the deed could not be sustained. Among other things it is said: "There can be no question, I think, at the present time, that a Director of a corporation is the agent or trustee of the stockholders, and as such has duties to discharge of a fiduciary nature towards his principal, and is subject to the obligations and disabilities incidental to that relation. * * *

Neither are the duties or obligations of a Director or Trustee altered from the circumstance that he is one of a number of Directors or Trustees, and that this circumstance diminishes his responsibility or relieves him from any incapacity to deal with the property of his *cestui que trust*. The same principles apply to him as one of a number, as if he were acting as a sole Trustee. It is not doubted that it has been shown that the relation of the Director to the stockholders is the same as that of the agent to his principal, the Trustee to his *cestui que trust;* and out of the identity of these relations necessarily spring the same duties, the same danger, and the same policy of the law."

In *Aberdeen Railway Company* v. *Blakie,* 1 McQueen's R. 461, the House of Lords held that a contract entered into by a manufacturer for the supply of iron furnishings to a railway company, of which he was a Director, or the Chairman, at the date of the contract, could not be enforced against the company. Lord Cranworth, delivering the opinion of the Court, says: "A corporate body can only act by agents, and it is, of course, the duty of those agents so to act as best to promote the interests of the corporation whose affairs they are conducting. Such an agent has duties to discharge of a fiduciary character toward his principal; and it is a rule of universal application that no one having such duties to discharge shall be allowed to enter into engagements in which he has or can have a personal interest, conflicting, or which may possibly conflict, with the interests of those whom he is bound to protect. So strictly is this principle adhered to that no question is allowed to be raised as to the fairness or unfairness of a contract so entered into. It obviously is, or may be, impossible to demonstrate how far, in any particular case, the terms of such a contract have been the best for the *cestui que trust* which it was possible to obtain. It may sometimes happen that the terms on which a trustee has dealt, or attempted to deal, with the estate or

interests of those for whom he is a trustee, have been as good as could have been obtained from any other person; they may even, at the time, have been better. But still so inflexible is the rule that no inquiry on that subject is permitted."

But it is claimed by the respondent that the rule does not apply in this case, because, the conveyance being to the railroad company, Sherman as a stockholder had only a remote or contingent interest in the land conveyed.

While it is true that a corporation holds the legal title of the corporate property, it is equally true that it holds it for the benefit of its stockholders. In them is the beneficial interest. If it makes, it is their gain; and if it loses, they bear the loss. At common law, though not parties to the record, they could not be witnesses for the corporation, for in all matters in which it was concerned they were considered to have a direct, certain and vested interest. (1 Greenleaf on Ev., Sec. 333.)

Men may, and often do, feel as deep a concern for the success of a corporation in which they are interested as for their own private affairs. To hold, therefore, that one intrusted with property in a fiduciary capacity may rightfully bargain in reference to it with a corporation in which he holds stock, would be to ignore all the evils which the rule in question was intended to prevent.

But Sherman was more than a stockholder; he was a Director of the corporation, also. As such, he sustained the relation of a Trustee to the stockholders, and it was his duty to use his best efforts to promote their and the corporation's interests.

It is also claimed that the rule does not apply here, because this conveyance having been made in pursuance of an Act of the Legislature, the Trustees had no discretion in the matter, and all of them, by mandamus, might have been compelled to make it. It is already seen, however, that

they were clothed with large discretion, both as to what and how much land should be conveyed, and the terms and conditions upon which the conveyance should be made.

Judgment and order reversed, and cause remanded.