[Sac. No. 4088.  In Bank.—January 10, 1928.]

H. G. MOODY, etc., Respondent, v. H. H. SHUFFLETON, Jr., County Auditor, etc., Appellant.

Jesse W. Carter, District Attorney, for Appellant.

William R. McKay, District Attorney of Kings County, Neil R. McAllister, District Attorney of Sacramento County, Devlin & Devlin and John J. O'Toole, City Attorney, City and County of San Francisco, *Amici Curiae*.

Chenoweth & Leininger and Maxwell McNutt for Respondent.

LANGDON, J.—This is a proceeding in *mandamus* to compel the defendant, as auditor of the county of Shasta, to draw his warrant in favor of plaintiff in the amount of certain claims previously approved by the board of supervisors of that county.

The facts leading up to the proceeding and necessary to its understanding are: H. L. Moody, the father of the plaintiff, had been, prior to July 17, 1925, the owner and publisher

of a newspaper known as "The Searchlight," published in Redding, Shasta County, California. In connection with the publication of this newspaper, he conducted a printing and jobbing business and owned and operated a general printing plant.

On September 19, 1923, he became supervisor of Shasta County. From the time he became supervisor until July, 1925, he did printing, advertising, and job work for and sold supplies to Shasta County and claims for the same were presented to the board of supervisors and approved. He collected from Shasta County, while he was supervisor, for printing, advertising, job work, and supplies, the sum of $5,755.96. In July, 1925, several claims presented by him for printing, job work, and supplies were, upon advice of the district attorney, rejected by the supervisors, as illegal claims and, thereafter, an action was brought against him by the district attorney of Shasta County to recover money which he had collected from the county for printing, advertising, job work, and supplies while he was supervisor. This action has since been tried and judgment rendered by the superior court of Shasta County against H. L. Moody and an appeal has been taken by him to this court, which appeal is at present undetermined.

About two weeks after the claims were rejected as aforesaid, in July, 1925, H. L. Moody recorded a bill of sale purporting to convey said newspaper and printing plant to H. G. Moody, his son, and contemporaneously recorded a chattel mortgage on said newspaper and printing plant, purporting to have been executed by said H. G. Moody to H. L. Moody and his wife, Emma H. Moody. Thereafter, H. G. Moody, doing business under the name and style of "The Searchlight," proceeded to do printing, advertising, and job work for and furnish supplies to Shasta County, and presented claims to the board of supervisors thereof for the payment of the same, and said H. L. Moody, sitting on the board of supervisors, approved said claims and the same were transmitted to the auditor with the request that he draw his warrant on the treasurer of Shasta County for the payment of the same. The auditor was advised by the district attorney of Shasta County that said claims and demands were illegal, because H. L. Moody, a supervisor of Shasta County, who participated in the approval and

allowance of said claims, was interested therein by reason of holding a chattel mortgage on "The Searchlight," a newspaper and printing plant furnishing said printing, job work, and supplies. The auditor thereupon refused to draw his warrant in favor of the petitioner and this proceeding was instituted in the superior court of Shasta County to obtain a writ of mandate commanding the auditor to draw his warrant in favor of the petitioner on the treasurer of Shasta County for the payment of said claim and demand. The writ was granted.

At the trial it was proven that the consideration paid by H. G. Moody to H. L. Moody for "The Searchlight" was $20,000 and the entire purchase price was represented by promissory notes which were secured by a chattel mortgage on "The Searchlight." It was admitted that the value of the machinery and equipment and all the physical properties constituting "The Searchlight" newspaper and printing plant was between $12,000 and $14,000 and that the remainder of the property making up the total value of $20,000 consisted of "goodwill." It also appears that after "The Searchlight" was transferred to H. G. Moody on July 17, 1925, Mrs. Emma H. Moody, wife of H. L. Moody, was employed as a bookkeeper in the office and received no compensation for her services.

The only question presented by the appeal is whether or not the claims made against the county were void because the contracts upon which they were based were in violation of sections 920 and 4322 of the Political Code, reading, respectively, as follows: "Members of the legislature, state, county, city and township officers, must not be interested in any contract made by them in their official capacity, or by any body or board of which they are members. . . .

"Supervisors must not be interested in purchases or contracts. No member of the board must be interested, directly or indirectly, in any property purchased for the use of the county, nor in any contract made by the board or other person, on behalf of the county for the erection of public buildings. . . . "

The foregoing statutory pronouncements are in consonance with the well-settled policy of the common law and numerous decisions are to be found vigorously enforcing the rule.

It is earnestly contended on behalf of the respondent that the facts of the present case do not bring it within the operation of section 920 of the Political Code, because it does not appear that the board of supervisors made the contract for the county with the plaintiff. Conceding that to be true, we turn to the consideration of the other section of the Political Code, above quoted. It is conceded that H. L. Moody, as supervisor of Shasta County, in passing upon the claims involved here, acted as a *quasi*-judicial officer, and the only point in dispute is whether or not H. L. Moody was "interested, directly or indirectly," within the intent of section 4322 of the Political Code in the supplies, printing, etc., purchased for the use of the county from "The Searchlight" because of his chattel mortgage upon all property of that business to secure to himself the full purchase price thereof.

The position of the county auditor is stated in his answer as follows: "That the value of the security of said chattel mortgage is therefore increased by the business received by said newspaper and printing business from the county of Shasta and said H. L. Moody is benefited thereby; that the larger the volume of business received by said newspaper and printing business from said county and the greater the price paid for the printing, advertising and supplies so furnished, the greater the value of said newspaper and printing business as security on said chattel mortgage; that it is to the interest of H. L. Moody to thus increase the value of said security."

The foregoing argument of appellant would be convincing even if this were a case of first impression in this state, but it appears that there is authority for his position, presenting precisely the same legal situation as we find in the instant case, in the case of *Quatman* v. *Superior Court*, 64 Cal. App. 203 [221 Pac. 666]. This was a proceeding in prohibition to prevent Honorable Claude F. Purkitt, as judge of the superior court of Glenn County, from further proceeding in the trial of an action entitled *Barceloux* v. *Sacramento Valley Realty Co.* The court stated: "At the time of the beginning of the action by Barceloux against the Sacramento Valley Realty Company, the respondent Purkitt was the owner and holder of a promissory note, dated June 6, 1920, for the sum of $301.60, made, executed and deliv-

ered to him by the Sacramento Valley Realty Company payable sixty days after date, and also was the owner and holder of an account against said Sacramento Valley Realty Company in the sum of $27.35.''

After the action had been commenced, but before trial, Judge Purkitt indorsed said note to a third party ''without recourse.'' The petitioner, who was interested in the litigation, contended that Judge Purkitt was disqualified because of his interest. The court held him disqualified because he was a creditor of one of the parties and in deciding against the further contention that the disqualification had been removed by the indorsement of the note ''without recourse,'' the court said: ''The authorities are practically unanimous to the effect that it does not follow that one who exempts himself from liability as an indorser by using the expression 'without recourse' or its equivalent stands free from all obligation in respect to the indorsement. His undertaking, notwithstanding the qualified indorsement, may be a substantial one, for it seems clear that he divests himself of none of the liabilities of the vendor of the paper.''

Assuredly this limited liability of an indorser without recourse is less of an interest in the business of the litigant than is the interest of a chattel mortgagee upon the entire property and goodwill of a business to secure its full purchase price.

The case of *Adams* v. *Minor*, 121 Cal. 372 [53 Pac. 815], holds that a judicial officer holding stock in a bank which is a creditor of an irrigation district is disqualified to act in a matter relating to the irrigation district.

The general policy of our statutory provisions upon this subject has been repeatedly upheld by the courts of this state. (*Meyer* v. *City of San Diego,* 121 Cal. 102 [66 Am. St. Rep. 22, 41 L. R. A. 762, 53 Pac. 434] ; *Berka* v. *Woodward,* 125 Cal. 119 [73 Am. St. Rep. 31, 45 L. R. A. 420, 57 Pac. 777] ; *Stockton Plumbing Co.* v. *Wheeler,* 68 Cal. App. 592 [229 Pac. 1020].)

The court in *Berko* v. *Woodward, supra,* uses language which seems specially apt in connection with the instant case. ''Our statutes are general in prohibiting any officer from being interested in such contracts, and, if ever there was an occasion for its strict enforcement, it certainly exists in a case such as this where the contractor is a member of the

common council, whose duty it is to make such contracts on behalf of the city. He cannot be permitted to place himself. in any situation where his personal interest will conflict with the faithful performance of his duty as trustee, and it matters not how fair upon the face of it the contract may be, the law will not suffer him to occupy a position so equivocal and so fraught with temptation.''

Other states, in construing statutes similar to the ones we are considering, have extended the rule further than the instant case requires. The case of *Foster* v. *City of Cape May,* 60 N. J. L. 78 [36 Atl. 1089], held that a member of a city council who held as collateral security a share of stock of an electric light company, was disqualified to vote to authorize a contract with such company to light the city, although the value of the stock was slight. In that case it was said: ''If interest be allowed to disqualify in any case, it must on all, and it is impossible by any scale to measure the different effects which it may have on different minds.'' The vital force of the foregoing conclusion is made apparent when we consider the possibility suggested by appellant were we to uphold the contention of the respondent: Suppose the business conducted by respondent was dependent solely or largely upon orders received from the county for its earning power. H. L. Moody, a member of the board of supervisors, would then be enabled to pass upon contracts which would be vital to the value of his security for $20,000. The possibilities of the contention of respondent stamp it as against public policy. As said by the court in the Quatman case, *supra:* ''It is not a question of whether the learned trial judge would or would not act impartially. A legal question only is presented.''

The judgment appealed from is reversed.

Curtis, J., Preston, J., Waste, C. J., Richards, J., Shenk, J., and Seawell, J., concurred.

Rehearing denied.

All the Justices concurred.