TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 98-401 |
| of | : | |
| | : | May 29, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY M. SUMMERS | : | |
| Deputy Attorney General | : | |
| | : | |

THE HONORABLE VALERIE BROWN, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

May a city council execute a contract with a corporation for the purchase of equipment if one of the council members and her spouse own less than 3 percent of the stock of the corporation, the spouse has been employed by the corporation for more than 3 years, and the spouse's salary from the corporation exceeds 5 percent of the total annual income of the member and spouse?

CONCLUSION

A city council may not execute a contract with a corporation for the purchase of equipment if one of the council members and her spouse owns less than 3 percent of the stock of the corporation, the spouse has been employed by the corporation for more than 3 years, and the spouse's salary from the corporation exceeds 5 percent of the total annual income of the member and the spouse.

ANALYSIS

Government Code section 1090 **Footnote No. 1** provides:

"Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. . . ."

We are asked to determine whether the prohibition contained in section 1090 would prevent execution of a contract between a city council and a corporation for the purchase of equipment under the following circumstances: one of the council members and her spouse own less than 3 percent of the stock of the corporation, the spouse has been employed by the corporation, which has more than 10 other employees, for more than 3 years; and the dividends on the stock together with the spouse's salary from the corporation amount to more than 5 percent of the annual combined income of the council member and spouse. We conclude that the contract may not be executed under the described circumstances.

In 66 Ops.Cal.Atty.Gen. 152, 156-157 (1983) we observed:

"Section 1090 of the Government Code codifies the common law prohibition and the general policy of this state against public officials having a personal interest in contracts they make in their official capacities. (*Terry* v. *Bender* (1956) 143 Cal.App.2d 198, 206; Schaefer v. *Berinstein* (1956) 140 Cal.App.2d 278, 289; *Stockton P. & S. Co.* v. *Wheeler* (1924) 68 Cal.App. 592, 597; *cf. Oakland* v. *California Construction Co.* (1940) 15 Cal.2d 573, 576.) Mindful of the ancient adage, that 'no man can serve two masters' (Matthew 6:24; *cf. People* v. *Darby* (1952) 114 Cal.App.2d 412, 426), 'a self-evident truth, as trite and impregnable as the law of gravity' (*Stockton P. & S. Co.* v. *Wheeler*, *supra*, at 601), the section was enacted to insure that public officials 'making' official contracts not be distracted by personal financial gain from exercising absolute loyalty and undivided allegiance to the best interest of the entity which they serve, and at least with respect to those contracts, it does so by removing or limiting the *possibility* of their being able to bring any direct or indirect personal influence to bear on an official decision regarding them. (*Stigall* v. *City of Taft* (1962) 58 Cal.2d 565, 569; *City Council* v. *McKinley* (1978) 80 Cal.App.3d 204, 212; *Fraser-Yamor Agency, Inc.* v. *County of Del Norte* (1977) 68 Cal.App.3d 201, 215.) The mechanism of the section is one of prohibiting public officials from being personally financially interested as private individuals in any such contract. . . ."

More recently in 76 Ops.Cal.Atty.Gen. 118, 119 (1993) we additionally stated:

". . . Section 1090 is concerned with financial interests, other than remote or minimal interests, which would prevent officials from exercising absolute loyalty and undivided allegiance in furthering the best interests of their public agencies. (See *Stigall* v. *City of Taft* (1962) 58 Cal.2d 565, 569.) Moreover, when section 1090 is applicable to one member of the governing body of a public entity, the proscription cannot be avoided by having the interested member abstain; the entire governing body is precluded from entering into the contract. (*Thomson* v. *Call* (1985) 38 Cal.3d 633, 647-649; *Stigall* v. *City of Taft*, *supra*, 58 Cal.2d at 569; *City of Imperial Beach* v. *Bailey* (1980) 103 Cal.App.3d 191, 197; 70 Ops.Cal.Atty.Gen. 45, 48 (1987); 69 Ops.Cal.Atty.Gen. 102, 104 (1986).) A contract which violates section 1090 is void. (*Thomson* v. *Call*, *supra*, 38 Cal.3d at p. 646.)" (Fn. omitted.)

The Supreme Court has declared that the purpose of section 1090's prohibition "is to remove or limit the *possibility* of any personal influence, either directly or indirectly, which might bear on an official's decision, as well as to void contracts which are actually obtained through fraud or dishonest conduct. . . ." (*Stigall* v. *City of Taft* (1962) 58 Cal.2d 565, 569.) The statutory goal is "not only to strike at actual impropriety, but also to strike at the appearance of impropriety." (*City of Imperial Beach* v. *Bailey* (1980) 103 Cal.App.3d 191, 197.) Section 1090's prohibition applies regardless of whether the contract is found to be fair and equitable (*Thomson* v. *Call* (1985) 38 Cal.3d 633, 646-649) or whether the official would agree to abstain from all participation in the decision-making process (*Fraser-Yamor Agency, Inc.* v. *County of Del Norte* (1977) 68 Cal.App.3d 201, 211-212).

In *Thomson* v. *Call*, *supra*, 38 Cal.3d at 645, the Supreme Court observed:

"Section 1090 forbids city officers . . . from being 'financially interested in any contract made by them in their official capacity, or by any body or board of which they are members.' The proscribed interest certainly includes any direct interest, such as that involved when an officer enters directly into a contract with the body of which he is a member. [Citations.] California courts have also consistently voided such contracts where the public officer was found to have an indirect interest therein. In *Moody* v. *Shuffleton* (1928) 203 Cal. 100 for example, a county supervisor sold his printing business to his son and took a promissory note

secured by a chattel mortgage on the business. Because the business helped to secure the value of the official's mortgage, we held that a conflict existed when printing contracts were awarded to the son. *It is also clear that where the public officer is a stockholder in a corporation making such a contract, the contract will be adjudged void under the conflict of interest statutes*." (Italics added, fn. omitted.)

Here, the council member has a financial interest in the spouse's stock ownership and salary from the corporation. Even though the stock certificates are in the name of the spouse alone, the council member must also be considered as having a personal financial interest in the stock as well as the salary. (See *Reece* v. *Alcoholic Bev. etc. Appeals Bd.* (1976) 64 Cal.App.3d 675, 683; *Nielsen* v. *Richards* (1925) 75 Cal.App. 680, 685-687; 78 Ops.Cal.Atty.Gen. 230, 236-237 (1995); 73 Ops.Cal.Atty. Gen. 191, 194-195 (1990); 69 Ops.Cal.Atty.Gen. 102, 106 (1986).) Standing alone, therefore, section 1090 clearly prohibits the contract between the city council and the corporation under the described circumstances. (See *Thomson* v. *Call*, *supra*, 38 Cal.3d at 645; *Fraser-Yamor Agency, Inc.* v. *County of Del Norte*, *supra*, *68 Cal.App.3d at 212; People* v. *Sobel* (1974) 40 Cal.App.3d 1046, 1052.)

However, the prohibition of section 1090 does not stand alone. In two instances, the Legislature has attempted to ameliorate the harsh consequences of its application. In section 1091, the Legislature has described various "remote interests," which if applicable, allow the making of the contract if the officer with the proscribed financial interest (1) discloses such interest to the public agency, (2) such interest is noted in the official records of the body, and (3) the officer abstains from participating in the making of the contract. (78 Ops.Cal.Atty.Gen., *supra*, 237; 67 Ops.Cal.Atty.Gen. 369, 377, fn. 8 (1984); 65 Ops.Cal.Atty.Gen. 305, 307 (1982).) The other situation is found in section 1091.5, which describes "noninterests," where if applicable, the contract may be executed because the Legislature has determined that the interest is insufficient to merit application of the prohibition. In noninterest situations, the interest does not require the officer's abstention and generally does not require disclosure.

Looking first at noninterests, we find that section 1091.5 states in relevant part:

"(a) An officer or employee shall not be deemed to be interested in a contract if his or her interest is any of the following:

"(1) The ownership of less than 3 percent of the shares of a corporation for profit, provided the total annual income to him or her from dividends, including the value of stock dividends, from the corporation does not exceed 5 percent of his or her total annual income, and any other payments made to him or her by the corporation do not exceed 5 percent of his or her total annual income.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ." **Footnote No. 2**

The facts presented here are that the city council member and spouse own stock in the corporation where the spouse is employed. Their ownership is less than 3 percent of the corporation's shares, and the stock dividends are less than 5 percent of their total income. However, "other payments" by the corporation in the form of the spouse's salary exceed 5 percent of the total annual income of the council member and spouse. Thus, the spouse's salary prevents the stock ownership from qualifying as a noninterest under subdivision (a)(1) of section 1091.5. No other provision of section 1091.5 would prevent the application of section 1090 in the described circumstances.

Turning to remote interests, we find that section 1091 states in relevant part:

"(a) An officer shall not be deemed to be interested in a contract entered into by a body or board of which the officer is a member within the meaning of this article if the officer has only a remote interest in the contract and if the fact of that interest is disclosed to the body of

the board of which the officer is a member and noted in its official records, and thereafter the body or board authorizes, approves, or ratifies the contract in good faith by a vote of its membership sufficient for the purpose without counting the vote or votes of the officer or member with the remote interest.

"(b) As used in this article, 'remote interest' means any of the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(2) That of an employee or agent of the contracting party, if the contracting party has 10 or more other employees and if the officer was an employee or agent of that contracting party for at least three years prior to the officer initially accepting his or her office.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(3) That of an employee or agent of the contracting party, if all of the following conditions are met:

"(A) The agency of which the person is an officer is a local public agency located in a county with a population of less than 4,000,000.

"(B) The contract is competitively bid and is not for personal services.

"(C) The employee or agent is not in a primary management capacity with the contracting party, is not an officer or director of the contracting party, *and holds no ownership interest in the contracting party*.

"(D) The contracting party has 10 or more other employees.

"(E) The employee or agent did not directly participate in formulating the bid of the contracting party.

"(F) The contracting party is the lowest responsible bidder.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ." (Italics added.)

Here, the council member's interest would not qualify under subdivision (b)(3) of section 1091 due to her stock ownership interest and the stock ownership interest of her spouse. Subdivision (b)(2) of section 1091 also has no application here, since it only applies to the financial interest of an employee, not that of an owner as in the present situation. We recognize that subdivision (b)(3) of section 1091 appears to be a more limited exception than subdivision (b)(2) and has the additional requirement of "no ownership interest" (§ 1091, subd. (b)(3)(C)). Although the latter requirement is not expressly contained in subdivision (b)(2), it must be so construed. Otherwise, a corporation could contract with a city even where a council member is the president of the corporation and owns all of the corporation's stock. Such construction of section 1091 would defeat the manifest purpose of section 1090 to avoid any appearance of impropriety. (*Stigall* v. *City of Taft*, *supra*, 58 Cal.2d at 569; *City of Imperial Beach* v. *Bailey*, *supra*, 103 Cal.App.3d at 197.) We have also examined the legislative histories of subdivision (b)(2) (see Stats. 1957, ch. 1499, § 1) and subdivision (b)(3) (see Stats. 1987, ch. 847, § 1) and have found that such construction would violate the Legislature's intent in enacting these provisions as well as the rule of strictly construing any exceptions to the general prohibition. When stock ownership is the financial interest in question, the Legislature has been precise and detailed in limiting the level of the ownership interest. (See § 1091, subds. (b)(6), (b)(10).) Any additional exceptions for stock ownership would require careful consideration by the Legislature, not an opinion of the Attorney General or the courts.

No other remote interest exception appears relevant to the present circumstances. Without one of the noninterest or remote interest exceptions applicable here, the prohibition contained in section 1090 precludes execution of the instant contract. **Footnote No. 3** In so concluding, we emphasize the purposes of the statutory prohibition as explained by the Supreme Court in *Thomson* v. *Call*, *supra*, 38 Cal.3d at 647-649:

"In *San Diego* v. *S .D. & L. A. R. R. Co.*, *supra*, 44 Cal. 106, we recognized the conflict-of-interest statutes' origins in the general principle that 'no man can faithfully serve two masters whose interests are or may be in conflict': 'The law, therefore, will not permit one who acts in a fiduciary capacity to deal with himself in his individual capacity. . . . For even if the honesty of the agency is unquestioned . . . yet the principal has in fact bargained for the exercise of all the skill, ability and industry of the agent, and he is entitled to demand the exertion of all this in his own favor.' (44 Cal. at p.113.) We reiterated this rationale more recently in *Stigall* v. *City of Taft*, *supra*, 58 Cal.2d 565: 'The instant statutes [§ 1090 et seq.] are concerned with *any* interest, other than perhaps a remote or minimal interest, which would prevent the officials from exercising absolute loyalty and undivided allegiance to the best interests of the city.' (58 Cal.2d at p. 569. See, also, *City of Imperial Beach* v. *Bailey* (1980) 103 Cal.App.3d 191, 196; *City Council* v. *McKinley* (1978) 80 Cal.App.3d 204, 212; *People* v. *Darby* (1952) 114 Cal.App.2d 412, 426; *Miller*, *supra*, 28 Cal.App.2d at p. 366; *Hobbs, Wall & Co.*, *supra*, 109 Cal.App.2d at p. 319.)

"In *Stigall* we relied in part on the reasoning of the United States Supreme Court on a federal penal statute under which a contract was declared to be unenforceable because of a conflict of interest: '"The statute is thus directed not only at dishonor, but also at conduct that tempts dishonor. This broad proscription embodies a recognition of the fact that an impairment of impartial judgment can occur in even the most well-meaning men when their personal economic interests are affected by the business they transact on behalf of the Government. To this extent, therefore, the statute is more concerned with what might have happened in a given situation than with what actually happened. It attempts to prevent honest government agents from succumbing to temptation by making it illegal for them to enter into relationships which are fraught with temptation."' (*Stigall*, *supra*, 58 Cal.2d at p. 570, quoting *United States* v. *Mississippi Valley Generating Co.* (1961) 364 U.S. 520 [5 L.Ed.2d 268, 91 S.Ct. 294].) Implicit in this reasoning is the assumption that the purpose of such statutes is 'not only to strike at actual impropriety, but also to strike at the appearance of impropriety.' (*City of Imperial Beach*, *supra*, 103 Cal.App.3d at p. 197 [construing § 1090].)

"It follows from the goals of eliminating temptation, avoiding the appearance of impropriety, and assuring the city of the officer's undivided and uncompromised allegiance that the violation of section 1090 cannot turn on the question of whether actual fraud or dishonesty was involved. Nor is an actual *loss* to the city or public agency necessary for a section 1090 violation. In *Stigall*, for example, a city councilman had a financial interest in a plumbing company which submitted the *lowest* bids for a municipal contract. Taxpayers sued to have the contracts declared void. They did not allege 'actual improprieties,' nor did they contend that the contract was unfair, unjust, or not beneficial to the city. (58 Cal.2d at p. 568.) On these facts, we nonetheless concluded that the contract violated section 1090, reasoning that the 'object of these enactments is to remove or limit the *possibility* of any personal influence, either directly or indirectly which might bear on an official's decision, as well as to void contracts which are actually obtained through fraud or dishonest conduct.' (*Id*. at p. 569. See, also, *San Diego* v. *S. D. & L. A. R. R. Co.*, *supra*, 44 Cal. at p. 13; *City of Imperial Beach*, *supra*, 103 Cal.App.3d at p. 197; *Fraser-Yamor Agency, Inc., supra*, 68 Cal.App.3d at p. 215; S*chaefer* v. *Berinstein* (1956) 140 Cal.App.2d 278, 290.) And in *Shuffleton*, *supra*, we observed that 'it matters not how fair upon the face of it the contract may be, the law will not suffer [the official] to occupy a position

so equivocal and so fraught with temptation.' (203 Cal. at p. 105.)

"In short, if the interest of a public officer is shown, the contract cannot be sustained by showing that it is fair, just and equitable as to the public entity. Nor does the fact that the forbidden contract would be more advantageous to the public entity than others might be have any bearing upon the question of its validity. (*Capron* v. *Hitchcock* (1893) 98 Cal. 427.)" (Fns. omitted.)

We conclude that a city council may not execute a contract with a corporation for the purchase of equipment if one of the council members and her spouse own less than 3 percent of the stock of the corporation, the spouse has been employed by the corporation for more than 3 years, and the spouse's salary from the corporation exceeds 5 percent of the total annual income of the member and spouse.

\* \* \* \* \*

**Footnote No. 1**
All section references hereafter are to the Government Code unless otherwise indicated.

**Footnote No. 2**
While the definitions of noninterests and remote interests appear to exempt from the operation of section 1090 only the interest of the officer, we have previously concluded that an exception for a noninterest or remote interest that would be available to the officer is also applicable to an interest held by the officer's spouse. (78 Ops.Cal.Atty.Gen., *supra*, at 237, fn.4.)

**Footnote No. 3**
A "rule of necessity" allows execution of a contract in narrowly defined circumstances. (See *Eldridge* v. *Sierra View Local Hospital Dist.* (1990) 224 Cal.App.3d 311, 321; 80 Ops.Cal.Atty.Gen. 335, 338-339 (1997); 65 Ops.Cal.Atty.Gen., *supra*, 310; 59 Ops.Cal.Atty.Gen. 458, 463-465 (1974).) The application of this rule is beyond the scope of this opinion.