EDMUND G. BROWN JR. Attorney General MARC J. NOLAN Deputy Attorney General
THE HONORABLE NORMA J. TORRES, MEMBER OF THE STATE ASSEMBLY, has requested an opinion on the following question:
May a city redevelopment agency enter into a loan agreement for commercial property improvement where the recipient of the proposed loan is a corporation solely owned by the adult, non-dependent son of an agency board member who also resides with the board member in the same rented apartment? *Page 2 
 CONCLUSION
The circumstance that the recipient of a proposed commercial property improvement loan from a city redevelopment agency would be a corporation solely owned by the adult, non-dependent son of an agency board member who also resides with the board member in the same rented apartment does not, by itself, preclude the agency from entering into an agreement to make that loan. However, to avoid a conflict between her official and personal interests, the board member should abstain from any official action with regard to the proposed loan agreement and make no attempt to influence the discussions, negotiations, or vote concerning that agreement.
 ANALYSIS
We are informed that a city redevelopment agency is considering whether to enter into a loan agreement for commercial property improvement and that the recipient of the proposed loan is to be a corporation solely owned by the adult son of an agency board member. We are also told that, while the son resides with the board member in the same rented apartment, we may assume for purposes of this analysis that he is not dependent on the board member for support.[1] Given this context, we are asked whether the agency may enter into the proposed loan agreement without violating any conflict-of-interest laws. As relevant here, those laws consist of two statutory schemes, Government Code section 1090 and its related provisions and the Political Reform Act of 1974, as well as the common law doctrine against conflicts of interest. For the reasons that follow, we conclude that the given circumstances, by themselves, would not preclude the agency from entering into the proposed loan agreement, but that, to avoid a conflict between her official and personal interests, the board member should completely abstain from any official action with regard to the proposed loan agreement and make no attempt to influence the discussions, negotiations, or vote concerning that agreement.
Government Code section 1090
Our consideration of the question presented first requires that we undertake an analysis under Government Code section 1090, [2] which generally forbids the board of a public agency from entering into a contract in which one of its members has a personal *Page 3 
financial interest.[3] In the words of the statute, "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. . . ."[4]
A city redevelopment agency is a public body, [5] and members of its governing board are thus public officials within the meaning of section 1090, which applies to virtually all members, officers, and employees of such agencies.[6] An agreement by a public agency to loan money is treated as a contract for purposes of section 1090.[7]
Section 1090 is concerned with financial interests, other than remote or minimal interests, that prevent public officials from exercising absolute loyalty and undivided allegiance in furthering the best interests of their public agencies.[8] Under section 1090, "the prohibited act is the making of a contract in which the official has a financial interest."[9] Such an interest may be direct or indirect, but the "evil to be thwarted by section 1090 is easily identified: If a public official is pulled in one direction by his financial interest and in another direction by his official duties, his judgment cannot and should not be trusted, even if he attempts impartiality."[10] A contract that violates section 1090 is void.[11]
With these principles in mind, we consider whether the familial relationship between the redevelopment agency board member and the member's adult son will, by itself, render the proposed loan agreement between the agency and the member's son's corporation invalid under section 1090. We considered a similar question in 88 Ops.Cal.Atty.Gen. 222
(2005). At issue in that opinion was whether the adult son of a *Page 4 
redevelopment agency board member could acquire real property within the redevelopment zone without causing the member to violate Health and Safety Code section 33130(a), which prohibits agency officers and employees from acquiring "any interest in any property included within the project area within the community," including "any indirect financial interest" in such property.[12] Because the statute under analysis did not further specify what constituted a prohibited "indirect financial interest," we found it appropriate to consult other conflict-of-interest statutes, including section 1090, to determine whether the parent-adult child relationship between the agency member and his son would give rise to the member having a cognizable financial interest in the property his son sought to purchase.[13] Our review of analogous statutory schemes led us to conclude that no such prohibited interest would arise solely on account of the parent-adult child relationship.[14]
Here, where we are called upon to analyze section 1090 and its related provisions directly, rather than by comparison, the result is the same. For purposes of this analysis, we note that the Legislature has expressly defined certain "remote interests"[15] and "noninterests"[16] that do not come within section 1090's general prohibition. If a "remote interest" is present, as defined in section 1090, the proposed contract may be made, but only if (1) the public official or board member in question discloses his or her financial interest in the contract to the public agency, (2) such interest is noted in the entity's official records, and (3) the individual with the remote interest abstains from any participation in the making of the contract.[17] If a "noninterest" is present, as defined in section 1091.5, the contract may be made without the official's abstention, and generally a noninterest does not require disclosure.[18] We have found that an examination of these statutory exceptions is useful in determining what would otherwise be viewed by the Legislature as constituting a proscribed "financial interest."[19] *Page 5 
In our 2005 opinion, we observed that, although the Legislature deems a parent to have a remote financial interest for purposes of section 1090 "in the earnings of his or her minor child for personal services,"[20]
there is no similar determination that a parent has either a direct or indirect financial interest in the property or earnings of an adult child.[21] And we have previously found that the familial relationship between a county supervisor and his adult brother, in that instance an automobile dealer, would not result in a violation of section 1090 if the brother sold automobiles to the county. "Neither brother has any proprietary `interest' in the financial attainments of the other; neither is entitled to any contribution or support from the other."[22]
The situation here is analogous. A parent is not legally compelled to support an adult child absent special circumstances not present here, such as the child's incapacity.[23] Conversely, an adult child has no legal duty to support a parent, unless the parent is "in need and unable to support himself or herself by work,"[24] a circumstance also not present here.
We are informed that the board member's son's corporation will receive the proceeds of the agency's loan. There is no indication that the member will personally profit from this transaction. While the Legislature could have characterized the inherent "interest" that a self-supporting parent may be said to have in the financial attainments of an adult child as one that, by itself, amounts to a prohibited financial interest, it has not done so. Nor have we located any judicial determination that the parent-adult child relationship, in itself, creates a financial conflict of interest in situations of the sort considered here.[25] Thus, we conclude that the familial relationship between the board *Page 6 
member and her adult son does not invalidate the proposed loan agreement under section 1090.
For similar reasons, we believe that a housing arrangement in which a public official and his or her adult child live together in the same rented apartment does not necessarily give the parent a prohibited financial interest in the contractual dealings of the child for purposes of section 1090. Although by statute a landlord has a "remote interest" in his or her tenant's official contracts and vice versa, [26] the same is not the case for individuals who share a rented apartment, and whose legal obligations to one another are different in kind from those owed between landlord and tenant. Thus, we conclude that section 1090 does not preclude the redevelopment agency from entering into the contract at issue due solely to the circumstance that an agency board member and her adult son share living space in a rented apartment.
Having so concluded, however, we caution that if there were other circumstances suggesting that the member had a financial interest in the proposed contract, those circumstances would need to be analyzed separately to determine whether an impermissible conflict existed.[27]
The Political Reform Act
We next consider what effect, if any, the Political Reform Act of 1974[28] has on this question. The Political Reform Act generally prohibits public officials from participating in "governmental decisions" in which they have a financial interest.[29] Of potential relevance here, the Political Reform Act requires officials to abstain from participating in such a decision when it will have a material financial effect on a member of his or her "immediate family."[30] The term "immediate family" includes only the official's "spouse and dependent children."[31] As stated earlier, we are assuming here that the board member's adult son is not her dependent. *Page 7 
No other provision of the Political Reform Act purports to link a public official's personal financial interests to those of an individual (other than the official's spouse and/or dependent children) with whom he or she shares a rented residence. Therefore, we find that the Political Reform Act's prohibitions are not triggered by the circumstance that the board member shares a rented residence with her adult son, whose corporation seeks to contract with the agency.
Common Law Doctrine against Conflicts of Interest
Having found no disqualifying financial interests within the meaning of section 1090 or the Political Reform Act, we now analyze the circumstances under the common law doctrine against conflicts of interest. The common law doctrine "prohibits public officials from placing themselves in a position where their private, personal interests may conflict with their official duties."[32] While the focus of the statutes analyzed above is on actual or potential financial conflicts, the common law prohibition extends to noneconomic interests as well.[33]
Thus, we have previously cautioned that, even where no conflict is found according to statutory prohibitions, special situations could still constitute a conflict under the common law doctrine.[34] While the common law may be abrogated by express statutory provisions, [35] the statutes we have considered thus far do not address the circumstances we have been asked to evaluate, nor are we aware of any other statutes that address those circumstances.
Here, even if the agency board member cannot be said to have a statutory financial interest in her son's contract with the agency within the meaning of section 1090 or the Political Reform Act, it is difficult to imagine that the agency member has no private or personal interest in whether her son's business transactions are successful or not. At the least, an appearance of impropriety or conflict would arise by the member's participation in the negotiations and voting upon an agreement that, if executed, would presumably redound to her son's financial benefit. As one court has said with regard to the common law doctrine and the need to strictly enforce it: *Page 8 
 A public officer is impliedly bound to exercise the powers conferred on him with disinterested skill, zeal, and diligence and primarily for the benefit of the public. . . . [¶]. . . . [¶] Actual injury is not the principle the law proceeds on. Fidelity in the agent is what is aimed at, and as a means of securing it the law will not permit him to place himself in a position in which he may be tempted by his own private interests to disregard those of his principal. This doctrine is generally applicable to private agents and trustees, but to public officers it applies with greater force, and sound policy requires that there be no relaxation of its stringency in any case that comes within its reason. . . .[36]
In our view, the agency board member's status as the private contracting party's parent and co-tenant places her in a position where there may be at least a temptation to act for personal or private reasons rather than with "disinterested skill, zeal, and diligence" in the public interest, thereby presenting a potential conflict. In an earlier opinion, we advised that a common law conflict of interest may "usually be avoided by [the official's] complete abstention from any official action" with respect to the transaction or any attempt to influence it.[37]
Under these circumstances, we believe that the only way to be sure of avoiding the common law prohibition is for the board member to abstain from any official action with regard to the proposed loan agreement and make no attempt to influence the discussions, negotiations, or vote concerning that agreement. *Page 9 
Accordingly, we conclude that the circumstance that the recipient of a proposed commercial property improvement loan from a city redevelopment agency would be a corporation solely owned by the adult, non-dependent son of an agency board member who also resides with the board member in the same rented apartment does not, by itself, preclude the agency from entering into an agreement to make that loan. However, to avoid a conflict between her official and personal interests, the board member should abstain from any official action with regard to the proposed loan agreement and make no attempt to influence the discussions, negotiations, or vote concerning that agreement.
[1] In support of this assumption, we have been informed that the agency board member does not claim her son as a dependent for tax purposes.
[2] All further references to the Government Code are by section number only.
[3] 89 Ops.Cal.Atty.Gen. 217, 218 (2006).
[4] Govt. Code § 1090.
[5] Health Safety Code § 33100; see 88 Ops.Cal.Atty.Gen. 222
(2005).
[6] See 61 Ops.Cal.Atty.Gen. 243, 248-250 (1978) (applying § 1090 to members of a local redevelopment agency).
[7] E.g., Carson Redevelopment Agency v. Padilla,140 Cal. App. 4th 1323, 1329-1330 (2006).
[8] Stigall v. Taft, 58 Cal. 2d 565, 569 (1962).
[9] People v. Honig, 48 Cal. App. 4th 289, 333 (1996).
[10] Carson Redevelopment Agency, 140 Cal. App. 4th at 1330.
[11] Thomson v. Call, 38 Cal. 3d 633, 646 (1985).
[12] 88 Ops.Cal.Atty.Gen. at 224.
[13] Id. at 224-225.
[14] Id.
[15] § 1091.
[16] § 1091.5.
[17] See 88 Ops.Cal.Atty.Gen. 106, 108 (2005);83 Ops.Cal.Atty.Gen. 246, 248 (2000); see also People v. Honig,48 Cal. App. 4th at 318-319.
[18] City of Vernon v. Central Basin Mun. Water Dist., 69 Cal. App. 4th 508, 514-515 (1999); 84 Ops.Cal.Atty.Gen. 158, 159-160 (2001).
[19] 85 Ops.Cal.Atty.Gen. 34, 36-37 (2002); see Honig, 48 Cal. App. 4th at 289, 317.
[20] § 1091(b)(4).
[21] 88 Ops.Cal.Atty.Gen. at 225.
[22] 28 Ops.Cal.Atty.Gen. 168, 169 (1956).
[23] In re Marriage of Chandler, 60 Cal. App. 4th 124, 130 (1997);In re Marriage of Lambe Meehan, 37 Cal. App. 4th 388, 391-392
(1995); see Fam. Code § 58.
[24] Fam. Code § 4400; see also Chavez v. Carpenter,91 Cal. App. 4th 1433, 1445 fn. 8 (2001) (noting statutory standard).
[25] An example of an indirect financial interest stemming from a parent-adult child transaction is found in Moody v. Shuffleton, 203 Cal. 100
(1928). There, a county supervisor sold his printing business to his son and took back a promissory note secured by a chattel mortgage on the business. Because the business helped to secure the value of the official's mortgage, it was held that a conflict existed when printing contracts were awarded to the son. Id. at 103-104; see also Thomson,38 Cal. 3d at 645. In that case, the public official had a financial interest in the transaction (that of a mortgage holder in a printing business seeking to contract with the county) that was separable from and not dependent on the parent-child relationship.
[26] § 1091(b)(5).
[27] See, e.g., 88 Ops.Cal.Atty.Gen. at 225.
[28] §§ 87100 et seq.
[29] See § 87100; 88 Ops.Cal.Atty.Gen. 32, 33-34 (2005).
[30] § 87103.
[31] § 82029.
[32] Clark v. City of Hermosa Beach, 48 Cal. App. 4th 1152, 1171
(1996), quoting 64 Ops.Cal.Atty.Gen. 795, 797 (1981); see also Kunec v.Brea Redevelopment Agency, 55 Cal. App. 4th 511, 519 (1997).
[33] Clark, 48 Cal. App. 4th at 1171 fn. 18;70 Ops.Cal.Atty.Gen. 45, 47 (1987); 64 Ops.Cal.Atty.Gen. at 797.
[34] See 53 Ops.Cal.Atty.Gen. 163, 165-167 (1970).
[35] 70 Ops.Cal.Atty.Gen. at 47; 67 Ops.Cal.Atty.Gen. 369, 381
(1984).
[36] Noble v. City of Palo Alto 89 Cal. App. 47, 51 (1928) (citations omitted); see also Clark, 48 Cal. App. 4th at 1170-1171.
[37] See 70 Ops.Cal.Atty.Gen. at 47; 64 Ops.Cal.Atty.Gen. at 797;see Clark, 48 Cal. App. 4th at 1171 (conflicted official is disqualified from taking any part in the discussion and vote regarding the particular matter); Eugene McQuillin, The Law of Municipal Corporations vol. 4, § 13.35, 840-841 (3d ed. rev. 1992); 26 Ops.Cal.Atty.Gen. 5, 7
(1955). *Page 1