[No. A114366. First Dist., Div. One. July 2, 2007.]

SUE C. BRANDENBURG, Plaintiff and Appellant, v.
EUREKA REDEVELOPMENT AGENCY et al., Defendants and
Respondents.

1352

**COUNSEL**

Law Offices of Neil L. Shapiro and Neil L. Shapiro for Plaintiff and Appellant.

Goldfarb & Lipman, Lee C. Rosenthal and Juliet E. Cox for Defendant and Respondent Eureka Redevelopment Agency.

Sheppard, Mullin, Richter & Hampton and Philip F. Atkins-Pattenson for Defendants and Respondents Dolores Vellutini and Eureka Waterfront Partners.

.

OPINION

**STEIN, J.**—Sue C. Brandenburg (plaintiff) appeals from a judgment entered in favor of defendants Eureka Redevelopment Agency, Eureka Waterfront Partners and Dolores Vellutini (defendants) after the court sustained, without leave to amend, defendants' demurrer to her first amended complaint on the ground that it was filed after the statute of limitations had expired.

We shall affirm the judgment.

FACTS

The original complaint was filed on September 12, 2005. The first amended complaint alleged that, pursuant to the provisions of Health and Safety Code section 33200, the City Council of Eureka appointed itself to serve as the Board of Directors for the Eureka Redevelopment Agency (Agency). The Agency created a Redevelopment Advisory Board (RAB) in August 1993, to assist the Agency in implementing plans to redevelop blighted areas in Eureka.

In July 1994, Dolores Vellutini, who is also a partner in Eureka Waterfront Partners, was appointed to serve on the RAB. She served continuously until she resigned in 2005, before the complaint was filed. Vellutini and Eureka Waterfront Partners submitted a proposal for the development of property known as the Fishermen's Building. On October 3, 1995, the RAB voted to recommend to the Agency that it enter into a 180-day exclusive right to negotiate agreement with Vellutini and Eureka Waterfront Partners. The Agency adopted that recommendation and extended the agreement on March 6, 1996, February 1, 1997, and February 1, 1998. In May 1998, Vellutini, on behalf of Eureka Waterfront Partners, signed a letter agreeing to price and other issues, and on December 21, 2001, signed a disposition and development agreement (the Agreement) with the Agency, granting Vellutini and Eureka Waterfront Partners the right to acquire the Fishermen's Building and develop it.

In the second cause of action,[1] plaintiff alleged that although the agreement was between the Agency and Eureka Waterfront Partners, Vellutini as a

---

[1] The first and third causes of action were against different defendants, Goldan and ReProp Properties. Although the dismissal is not part of the record, plaintiff represents that by stipulation, the action against these two defendants was dismissed.

member of the RAB made the recommendation that the Agency grant Eureka Waterfront Partners the exclusive right to negotiate, and the Agency simply "rubber-stamped" that recommendation. Plaintiff further alleged that, in violation of Government Code section 1090,[2] Vellutini had a financial interest in the Agreement, and that the Agreement was therefore void as provided in Government Code section 1092.[3] Plaintiff sought injunctive relief to enjoin further negotiations, and to prevent conveyance or receipt of any real or personal property in accordance with the terms of the Agreement.

In her fourth cause of action plaintiff alleged that it would violate Health and Safety Code section 33130[4] if Vellutini and Eureka Waterfront Partners were allowed to acquire the property that was the subject of the Agreement. Plaintiff therefore sought an injunction preventing "the Agency from conveying, and Vellutini and Partners from accepting, any interest in any property within a project area, . . . including . . . that real property described in the . . . Agreement."

The Agency demurred to the second and fourth causes of action, arguing that they were barred by the expiration of either the three-year limitation period established by Code of Civil Procedure section 338, subdivision (a)[5] applicable to liabilities created by statute, or the one-year period set forth in section 340, subdivision (a) applicable to actions seeking penalties or forfeiture. Vellutini and Eureka Waterfront Partners joined in the demurrer. Plaintiff opposed the motion, arguing that the four-year period defined in section 343 applied. The court sustained the demurrer without leave to amend, on the

[2] Government Code section 1090 provides: "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. Nor shall state, county, district, judicial district, and city officers or employees be purchasers at any sale or vendors at any purchase made by them in their official capacity. [¶] As used in this article, 'district' means any agency of the state formed pursuant to general law or special act, for the local performance of governmental or proprietary functions within limited boundaries."

[3] Government Code section 1092 provides: "Every contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of any party except the officer interested therein. No such contract may be avoided because of the interest of an officer therein unless such contract is made in the official capacity of such officer, or by a board or body of which he is a member."

[4] Health and Safety Code section 33130 prohibits any agency or community officer or employee who is required to participate in the formulation of, or to approve plans for, redevelopment from acquiring an interest in any property within the project area.

[5] Unless otherwise indicated all subsequent statutory references shall be to the Code of Civil Procedure.

ground that plaintiff's causes of action were filed after the period set forth in section 338. The court thereafter entered a judgment of dismissal.[6]

## ANALYSIS

The parties agree that plaintiff's causes of action accrued on or before December 21, 2001, the date of execution of the Disposition and Development Agreement between Eureka Waterfront Partners and the Agency. Plaintiff filed her complaint on September 12, 2005, nearly four years later.

If either the three-year limitation period established by section 338, subdivision (a) for liabilities created by statute, or the one-year period set forth in section 340, subdivision (a) for actions seeking penalties or forfeiture applies, plaintiff's causes of action are barred by the expiration of the statute of limitation. If, as plaintiff contends, neither section 338, subdivision (a) nor section 340, subdivision (a) applies, and instead the four-year "catch-all" limitation period defined in section 343 applies, the judgment must be reversed.[7]

Marin Healthcare District v. Sutter Health.

Both parties rely upon *Marin Healthcare Dist. v. Sutter Health* (2002) 103 Cal.App.4th 861 [127 Cal.Rptr.2d 113] (*Sutter· Health*), the only published decision to discuss which statute of limitation applies to causes of action based upon Government Code·sections 1090 and 1092. *Sutter Health* provides some support for application of each of the aforementioned limitations periods, but it does not resolve the issue, because the selection of one of several possible applicable statutes of limitation was not necessary on the facts of the case.

In *Sutter Health*, a health care district filed an action·to void two contracts and recover possession of a publicly owned hospital and other assets it had

---

[6] Plaintiff filed a premature notice of appeal before the judgment was entered. It is deemed filed immediately after entry of the judgment and is timely. (Cal. Rules of Court, rule 8.104(e).)

[7] Plaintiff does not advance any argument that a different limitations period applies to her cause of action pursuant to Health and Safety Code section 33130. We therefore deem any such contention waived, and shall not separately analyze what statute of limitation applies to Health and Safety Code section 33130. Since we shall uphold the demurrer on the ground that the causes of action are barred by the statute of limitation, we need not reach defendant's alternative contention that the demurrer may be sustained as to the cause of action based upon Health and Safety Code section 33130·because it applies only to acquisition of title in affected property *while in office*. The complaint alleged Vellutini no longer serves on the RAB, and title to the Fisherman's building had not yet been conveyed to her partnership.

leased and transferred 12 years earlier to the defendant hospital. The district contended the contracts were void because the district's chief executive and legal counsel had a financial interest in the agreements in violation of Government Code section 1090. (*Sutter Health, supra*, 103 Cal.App.4th at p. 871.) The trial court entered judgment for the defendant, finding that the district's action was time-barred. (*Id.* at pp. 870–871.) On appeal the district argued that a judicially created doctrine enunciated in *Hoadley v. San Francisco* (1875) 50 Cal. 265 (*Hoadley*) that the statute of limitations does not apply to certain types of actions by the state to recover property dedicated for public use should be extended to its action to void the lease. The Court of Appeal held that the *Hoadley* rule did not apply, and that the district's causes of action pursuant to Government Code sections 1090 and 1092 were barred by *any one* of several possible applicable limitations periods. (*Sutter Health, supra*, at p. 878.)

■ The Court of Appeal first observed that no case had "squarely addressed the applicable statute of limitations for suits to void a contract in violation of Government Code section 1092." (*Sutter Health, supra*, 103 Cal.App.4th at p. 877.) Then, applying the well-established principle that the determination of the applicable statute of limitation depends not upon the relief sought, or the form of action, but rather upon the "nature of the right sued upon" (*id.* at p. 878), the court found that "the nature of the right sued on here is the public's right to be free of a government contract made under the influence of a financial conflict of interest . . . and is thus covered by chapter 3 of title 2 of part 2 [of the Code of Civil Procedure] (commencing with § 335)" (*id.* at p. 876).

The court initially noted that several courts had applied a three-year statute to "cases raising a financial conflict of interest under Government Code section 1090 or its predecessor statute." (*Sutter Health, supra*, 103 Cal.App.4th at p. 877; see, e.g., *People v. Honig* (1996) 48 Cal.App.4th 289, 304, fn. 1 [55 Cal.Rptr.2d 555] (*Honig*) [applying the three-year limitations period to actions under Gov. Code, § 1097 imposing criminal penalties for willful violations of Gov. Code, § 1090]; *County of Marin v. Messner* (1941) 44 Cal.App.2d 577, 591 [112 P.2d 731] (*Messner*) [action to recover money paid without authority under predecessor statute to Gov. Code, § 1090 is subject to three-year limitations period for liability created by statute]; *Schaefer v. Berinstein* (1956) 140 Cal.App.2d 278, 294, 297 [295 P.2d 113] [when gravamen of taxpayer's action is fraud against the city based, in part, on violation of Gov. Code, § 1090, three-year statute applies].)

The court also observed that the one-year limitations period under section 340, subdivision (a) arguably applied to the district's claims to declare the 1985 contracts void and to repossess the transferred assets. "A forfeiture is '[t]he divestiture of property without compensation' or '[t]he loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty.' [Citation.]" (*Sutter Health, supra,* 103 Cal.App.4th at p. 877.) In support of application of section 340, subdivision (a), the court cited *Thomson v. Call* (1985) 38 Cal.3d 633, 646, footnote 15 [214 Cal.Rptr. 139, 699 P.2d 316] (*Call*). In that case the California Supreme Court had interpreted Government Code section 1090 to permit a governmental agency "to recover any consideration which it has paid, without restoring the benefits received under the contract." (*Id.* at p. 647.) Our Supreme Court further acknowledged that such an action results "in a substantial forfeiture" to provide "public officials with a strong incentive to avoid conflict-of-interest situations scrupulously." (*Id.* at p. 650.) The *Sutter Health* court reasoned that, in light of the holding in *Call,* "Government Code section 1092, which voids contracts in which a state employee has a financial conflict of interest without regard to the restoration of benefits, certainly would appear to effect a forfeiture." (*Sutter Health, supra,* at p. 877.).

The court, however, deemed it unnecessary to decide whether section 340, subdivision (a) applies, because "the District's causes of action—brought 12 years after it entered the purportedly void agreements—would be time-barred under the four-year limitations period under the catchall provision of section 343." (*Sutter Health, supra,* 103 Cal.App.4th at p. 878.) "Applying section 343 to this action to void the 1985 contracts on the ground of illegality would certainly be consistent with existing case authority. [Citations.]" (*Ibid.*)

The court concluded that, "unless the *Hoadley* doctrine exempts this action from the statute of limitations, defendants have successfully established that this action, filed in 1997—12 years [after the cause of action accrued]—is untimely under *either . . . section 340, subdivision (1) [now subdivision (a)], or section 343.*" (*Sutter Health, supra,* 103 Cal.App.4th at p. 880, italics added.) Since the court ultimately rejected the district's contention that the *Hoadley* rule (*Hoadley, supra,* 50 Cal. 265) should be extended to this type of action, it affirmed the judgment, without determining which of the arguably applicable limitations periods applied.

■ Unlike *Sutter Health, supra,* 103 Cal.App.4th 861, in this case, the question of *which* statute of limitations applies is squarely presented because plaintiff's causes of action are not barred if, as plaintiff contends, the catch-all

four-year period set forth in section 343 applies. It is, however, well established that the four-year period set forth in section 343 applies only when *no other* more specific limitation period is applicable. (See, e.g., *Geneva Towers Ltd. Partnership v. City and County of San Francisco* (2003) 29 Cal.4th 769, 773–774 [129 Cal.Rptr.2d 107, 60 P.3d 692]; *City of Los Angeles v. Belridge Oil Co.* (1954) 42 Cal.2d 823, 833 [271 P.2d 5]; *Moss v. Moss* (1942) 20 Cal.2d 640, 644–645 [128 P.2d 526] [in the absence of any section of the code that expressly limits the time within which an action for cancellation of an instrument must be brought, it is governed by § 343].) Therefore, if we conclude that either section 338, subdivision (a) or section 340, subdivision (a) applies, then section 343 is necessarily inapplicable.

*Section 338, subdivision (a).*

■ For purposes of section 338, subdivision (a), " ' "[a] liability created by statute . . ." ' 'applies only where the liability is embodied in a statutory provision *and* was of a type which did not exist at common law.' " (*Blue Cross of Northern California v. Cory* (1981) 120 Cal.App.3d 723, 742 [174 Cal.Rptr. 901] (*Cory*) [court held section 338 applied to bar a cross-complaint by the controller because the liability of the holder of escheated money to the controller is created by the statute exclusively and its equivalent did not exist at common law, which only recognized the doctrine of escheat as affecting land alone as an incident of the feudal system].)

Defendants argue *Messner, supra,* 44 Cal.App.2d 577, an approximately 70-year-old decision authored by a pro tempore judge for this division, should be dispositive because in that case this court applied the three-year limitation period for a liability created by a statute to an action involving former Political Code section 920, the predecessor to Government Code section 1090.[8] In *Messner,* a district attorney filed an action pursuant to former

---

[8] *Messner, supra,* 44 Cal.App.2d 577, is one of the cases the court in *Sutter Health, supra,* 103 Cal.App.4th 861, cited as applying a three-year limitation period to actions involving contracts in which a public official has a prohibited financial interest. The other cases cited in *Sutter Health* did not apply section 338, subdivision (a). *Honig, supra,* 48 Cal.App.4th 289, involved a *criminal* prosecution pursuant to Government Code sections 1090 and 1097, and the court simply noted there was no dispute the prosecution was within the three-year period set forth in Penal Code sections 801 and 803, subdivision (c). (*Honig,* at p. 304, fn. 1.) In *Schaefer v. Berinstein, supra,* 140 Cal.App.2d at pp. 294, 297, some of the causes of action were based upon a city charter provision that imposed duties similar to those imposed by Government Code section 1090. The underlying facts also involved elements of fraud, and the court held the gravamen of the causes of action was *fraud.* It therefore came within the period specified in the forerunner of section 338, subdivision (d) applicable to actions for relief on the ground of fraud or mistake. There is no contention in this case that Vellutini engaged in fraud or that section 338, subdivision (d) should apply.

Political Code section 4005b,[9] which provided that it is the duty of the district attorney to institute suit to recover any funds paid by the board of supervisors as salary or fees "without authority of law," and to recover 20 percent as damages. (*Messner, supra,* at p. 579.) The trial court found certain payments made to a county surveyor were made "without authority of law" because they did not fall within an exception to former Political Code section 920, which permitted public officials to contract for an allowance or mileage rate for the use of owned or rented vehicles used in the performance of duties. (*Messner, supra,* at pp. 579, 582.) The trial court also ruled that payments made in the three years preceding filing of the complaint could be recovered, because a three-year limitation period applied. Most of this court's analysis was devoted to the primary issue on appeal, i.e., whether any of the payments fell within the exception to former Political Code section 920. The surveyor also argued that the applicable limitation period was a two-year statute applicable to implied contracts for money had and received. (*Messner, supra,* at p. 580.) On this statute of limitations issue, the decision, with no supporting analysis, simply stated the conclusion that it was "an action based upon a liability created by statute, *to wit, section 4005b of the Political* Code; and therefore . . . the three-year statute [citation], is controlling." (*Messner, supra,* at p. 591, italics added.)

The holding in *Messner, supra,* 44 Cal.App.2d 577, is not dispositive for two reasons. First, the holding was that an action pursuant to former *Political Code section 4005b,* not an action based upon former Political Code section 920, was governed by the three-year limitations period applicable to an action on a liability created by statute. Although the determination whether the payments had been made "without authority of law" within the meaning of former Political Code section 4005b turned on an interpretation of an exception to former Political Code 920, the court in *Messner* did not directly consider or decide what statute of limitations would apply to an action to void a contract based upon that section. Therefore, the attempt to extend the holding of *Messner* to such an action is attenuated.

██ Second, and more fundamentally, the *Messner* decision did not even discuss the crucial caveat that the limitations period for liability created by statute " 'applies only where the liability is embodied in a statutory provision *and was of a type which did not exist at common law.*' "[10] (*Cory, supra,* 120

---

[9] Current Government Code section 26525 is derived from former Political Code section 4005b (see *Citizen Advocates, Inc. v. Board of Supervisors* (1983) 146 Cal.App.3d 171 [194 Cal.Rptr. 61]).

[10] Defendants argue that we should disregard plaintiff's argument made in her reply brief that section 338, subdivision (a) is inapplicable because Government Code section 1090 merely codified common law, because she did not make it below, or in her opening brief. We have the discretion to consider such an argument when it turns only upon an interpretation of

Cal.App.3d at p. 742, original italics and italics added; see also *Lehman v. Superior Court* (2006) 145 Cal.App.4th 109, 121 [51 Cal.Rptr.3d 411] (*Lehman*) [it has been the law for more than 50 years that the determination whether a liability is created by statute requires analysis of whether the liability or duty existed at common law].) " 'Thus, where a cause of action is based upon a statute which did not "create a new form of liability . . . but merely codified and refined existing law," the section 338 three-year limitations period for actions based upon statutory liability does not apply.' " (*Gatto v. County of Sonoma* (2002) 98 Cal.App.4th 744, 755–756 [120 Cal.Rptr.2d 550] (*Gatto*).)

■ The courts have long recognized former Political Code section 920, the predecessor to Government Code section 1090, was merely an express legislative declaration of the common law. (See, e.g., *Moody v. Shuffleton* (1928) 203 Cal. 100, 102 [262 P. 1095] [former Pol. Code, § 920 is consistent with "the well-settled policy of the common law"]; *Stockton P. & S. Co. v. Wheeler* (1924) 68 Cal.App. 592, 597 [229 P. 1020] [with the possible exception of statutes imposing criminal liability, former Pol. Code, § 920 and other statutes prohibiting contracts in which public official has a financial interest "are, generally speaking, merely express legislative declarations of the common-law doctrine upon the subject"].[11]) The same common law derivation has repeatedly been recognized in cases interpreting Government Code section 1090. In *Carson Redevelopment Agency v. Padilla* (2006) 140 Cal.App.4th 1323 [44 Cal.Rptr.3d 881], the court stated: "As history reveals, there has long been a common law proscription against public officials having a financial interest in contracts created by them in their official capacities. [Citation.] In 1951, the Legislature codified the proscription when it enacted [Government Code] section 1090 to curb conflicts of interest with respect to contracts, purchases and sales made by public officials." (*Id.* at pp. 1329–1330; see also *Honig, supra*, 48 Cal.App.4th at p. 317 ["Section 1090, it has been said, is an embodiment of the common law with respect to conflicts of interest"].)

---

the law. Moreover, any potential unfairness arising from the fact that plaintiff did not raise it until her reply brief has been addressed because, by requesting supplemental briefing on the issue, we gave defendants an opportunity to respond.

[11] The court explained the underlying principle as follows: "The principle upon which public officers are denied the right to make contracts in their official capacity with themselves or to be or become interested in contracts thus made is evolved from the self-evident truth, as trite and impregnable as the law of gravitation, that no person can, at one and the same time, faithfully serve two masters representing diverse or inconsistent interests with respect to the service to be performed. The principle has always been one of the essential attributes of every rational system of positive law, even reaching to private contractual transactions, whereby there are created between individuals trust or fiduciary relations." (*Stockton P. & S. Co. v. Wheeler, supra,* 68 Cal.App. at p. 601.)

Defendants acknowledge the common law origins of the prohibition stated in Government Code section 1090. They state that the first codification of this common law principle was in 1851 when the Legislature enacted a statute prohibiting any city, county, or state officer from contracting with the board of which he is a member, and from being "interested in any Contract made by such Officer or Legislature of which he is a member." (Stats. 1851, ch. 136, § 2, p. 522; see Stats. 1851, ch. 136, §§ 1, 3–4, p. 522.) Nonetheless, defendants argue that differences between the common law rule and Government Code section 1090 and its statutory predecessors separate the statute from its common law roots. Specifically, they assert that the common law rule proscribed only contracts tainted by the financially interested official's *personal participation* in the making of the contract, whereas Government Code section 1090, and its predecessor, former Political Code section 920, expanded the common law rule to also apply when the interested official is a member of the board or body making the contract. Yet, they are unable to cite any authority explicitly making the claimed distinction between the rule at common law and the statutory standard. Instead, they ask that we *infer* that the common law proscription was so limited simply because the early California cases they cite happened to involve officials who did personally participate in the making of the unlawful contract. (See *San Diego v. S. D. & L. A. R. R. Co.* (1872) 44 Cal. 106 (*San Diego*); *Reclamation Dist. No. 531 v. McCullah* (1899) 124 Cal. 175, 183–184 [56 P. 887].) The suggested inference is equivocal at best because the facts of these cases did not require the court to decide whether the contracts would also be void if the interested official had not participated.[12]

■ In any event, we need not belabor the question whether defendants accurately identify a distinction between the common law rule and Government Code section 1090 and its predecessor, former Political Code section 920, because, even if correct, the existence of such a variance does not establish that the liability codified in Government Code section 1090 was "created" by that statute or its predecessor, Political Code section 920. "A liability is ' "created by statute" ' if it 'would not exist *but for* the statute.' [Citations.] ' "[A] liability created by statute . . ." is a liability that comes into being solely by statute and one which had no existence prior to the enactment creating it. Where liability would exist in some form irrespective of the statute, it is not ". . . a liability created by statute." ' [Citation.] 'Any statutory

[12] Moreover, in *San Diego, supra,* 44 Cal. 106, the court cited at least one out-of-state decision that expressly rejected the suggestion that the common law rule voiding the contract would be any different in a case in which the interested official did not personally participate in the decision. (See *Pickett v. School District No. 1, Town of Wiota, etc.* (1870) 25 Wis. 551, 557 [cited in *San Diego, supra,* at p. 114].)

"modification, alteration or conditioning" of a common-law cause of action which falls short of creating a previously unavailable cause of action does not transform that cause of action into "an action . . . upon a liability created by statute." ' [Citation.] And where a statute merely limits or expands the remedies available for a breach of duty existing at common law, the *liability* is not created by statute. [Citations.]" (*Lehman, supra,* 145 Cal.App.4th at p. 119.) Applying these principles, the court, in *Gatto, supra,* 98 Cal.App.4th 744, recognized " '[t]he general policy embodied in [Civil Code] section 51 can be traced to early common law doctrine that required a few, particularly vital, public enterprises—such as privately owned toll bridges, ferryboats, and inns—to serve all members of the public without arbitrary discrimination.' " (*Id.* at p. 756.) Although Civil Code section 51 extended this principle to a broader range of places of public accommodation, the court held that Civil Code section 51 is not a liability created by statute because it merely refined and codified existing common law liability. (*Gatto,* at pp. 756–757, 760.)

■ Similarly, here, even if we assume arguendo that defendants are correct that Government Code section 1090 expanded or modified the basic common law prohibition against public officials having an interest in public contracts to include contracts made by a board or body of which the official is a member, that change " 'falls short of creating a previously unavailable cause of action [and] does not transform that cause of action into "an action . . . upon a liability created by statute." ' " (*Lehman,* at p. 119.)

■ For the forgoing reasons we conclude that Government Code section 1090 is not a "liability created by statute." Therefore, the three-year limitations period set forth in section 338, subdivision (a) is inapplicable.

*Section 340, subdivision (a).*

■ Section 340 specifies a limitations period of one year for "[a]n action upon a statute for a penalty or forfeiture." " ' " '[The] California Supreme Court has characterized as a penalty "any law compelling a defendant to pay a plaintiff other than what is necessary to compensate him [or her] for a legal damage done him [or her] by the former." ' " ' " (*Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 386 [17 Cal.Rptr.3d 39].)

■ Neither Government Code section 1090 nor Government Code section 1092 imposes a *penalty* as that term is interpreted under section 340. Statutes that provide for " ' "recovery of damages additional to actual losses incurred, such as double or treble damages," ' " have been held to impose a penalty, and are governed by the one-year period of limitations stated in section 340, subdivision (a). (*Murphy v. Kenneth Cole Productions, Inc.*

(2007) 40 Cal.4th 1094, 1104 [56 Cal.Rptr.3d 880, 155 P.3d 284], citing *Prudential Home Mortgage Co. v. Superior Court* (1998) 66 Cal.App.4th 1236, 1242 [78 Cal.Rptr.2d 566].) Although a criminal monetary penalty is imposed by Government Code section 1097 for a willful violation of Government Code section 1090, this action does not involve Government Code section 1097 or any allegations of willfulness.

■ ■ Section 340, subdivision (a), however, also applies to "[a]n action upon a . . . *forfeiture.*" (Italics added.) "A forfeiture is '[t]he divestiture of property without compensation' or '[t]he loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty.' " (*Sutter Health, supra,* 103 Cal.App.4th at p. 877.) Government Code sections 1090 and 1092 do impose a forfeiture consisting of the loss of any contract rights or interests as the result of the breach of the obligation or duty of the interested public official not to have a proscribed interest in contracts made in their official capacity or by a body or board of which they are a member. It is settled law that where a contract is made in violation of section 1090, the public entity involved is entitled to recover any compensation that it has paid under the contract *without restoring any of the benefits it has received.* (*Call, supra,* 38 Cal.3d at pp. 646–647; see also Gov. Code, § 1092.) The contract is against the express prohibition of the law, and " '. . . courts will not entertain any rights growing out of such a contract, or permit a recovery upon a quantum meruit or quantum valebat.' " (*Call, supra,* at p. 647, quoting *County of Shasta v. Moody* (1928) 90 Cal.App. 519, 523–524 [265 P. 1032], italics omitted.) In *Call,* the California Supreme Court acknowledged that Government Code section 1090 imposes a "substantial forfeiture" and explained that it does so to provide public officials with a "strong incentive to avoid conflict-of-interest situations scrupulously." (*Call, supra,* at p. 650; see also *Campagna v. City of Sanger* (1996) 42 Cal.App.4th 533, 538 [49 Cal.Rptr.2d 676] ["A person who violates section 1090, regardless of whether the violation is intentional, forfeits any rights or interests flowing from the illegal contract"].) As the court observed in *Sutter Health,* section 1092 "certainly would appear to effect a forfeiture." (*Sutter Health, supra,* at p. 877.)

■ Plaintiff argues that Government Code sections 1090 and 1092 only involve a forfeiture when applied to a contract that has been partially or fully performed, such as the one at issue in *Call, supra,* 38 Cal.3d 633. She asserts the contract in this case is "executory" and she only seeks an injunction against performance. She concludes that the action is not on a statute for a forfeiture because defendants Vellutini and Eureka Waterfront Partners have not yet parted with any money or property, nor have they received any money

or property.[13] The distinction is unavailing because, as used in section 340, subdivision (a), a "forfeiture" is not limited to the divestiture of money or property without compensation. It also includes the " 'loss of a *right*, *privilege*, or property because of a crime, breach of obligation, or neglect of duty.' " (*Sutter Health, supra*, 103 Cal.App.4th at p. 877, italics added.) The one-year statute of limitations contemplating "forfeitures" is directed to situations where " 'an individual is allowed to recover against a *wrong-doer*, . . . without reference to the actual damage sustained, or [where there is] . . . *punishment* for some act which is in the nature of a public wrong.' " (*Low v. Lan* (2002) 96 Cal.App.4th 1371, 1381 [118 Cal.Rptr.2d 60], citing *County of Los Angeles v. Ballerino* (1893) 99 Cal. 593, 596 [34 P. 329].) Even where the contract is executory, an injunction based upon Government Code sections 1090 and 1092 deprives the parties of the right to enforcement of the contract, and of receiving the benefit of their bargain. In this case, it is alleged that under the Agreement, Vellutini and Eureka Waterfront Partners were granted the right to acquire the Fisherman's Building property and develop it, upon certain terms and conditions. Whether the contract is purely executory or partially performed, the effect of Government Code section 1090 is to compel the forfeiture of those rights because of a breach by a public official of the obligation to serve the public free of any actual conflict, or appearance of a conflict, that may arise when he or she has a prohibited interest in a contract. The forfeiture is imposed without regard to any showing of actual damages or fraud, and even if the contract in substance might actually have benefited the public. It applies not because the contract actually agreed to is unfair or against the public's interest but because it might have been, and with the object of creating a disincentive to engage in such conduct. (See *Call, supra*, at p. 646; see also *Honig, supra*, 48 Cal.App.4th at p. 314.)

 We conclude that an action pursuant to Government Code sections 1090 and 1092 does impose the loss of rights and property without regard to actual damages as the consequence of commission of a public wrong or breach of a duty to the public, and therefore it is an "action upon a statute for a penalty or forfeiture" within the meaning of Code of Civil Procedure section 340, subdivision (a). Since the complaint was filed more than three years after the causes of action accrued, the one-year limitations period had expired. The court therefore did not err in sustaining the demurrer on the ground that plaintiff's action was filed after the applicable limitations period had expired.

---

[13] Although the complaint does not so allege, for the purpose of our analysis we shall assume arguendo that plaintiff could truthfully amend the complaint with an allegation that the contract is in fact executory.

### CONCLUSION

The judgment is affirmed.

Marchiano, P. J., and Margulies, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 10, 2007, S155212.