Filed 8/23/24  City of South Gate v. Robles CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CITY OF SOUTH GATE,<br><br>Respondent,<br><br>v.<br><br>ALBERT T. ROBLES,<br><br>Appellant. | B325897<br><br>(Los Angeles County<br>Super. Ct. No. BC334843)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN THE JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on August 1, 2024, be modified as follows:

1.  On page thirteen, after the paragraph ending

"incorporated into a written employment contract" and before the "Grant of Summary Adjudication" heading, insert the following paragraphs:

In his petition for rehearing, Robles raises nearly half a dozen newly minted arguments assailing the trial court's ruling that the four claims underlying summary judgment in the City's favor were timely filed. Robles's petition is procedurally improper, as petitions for rehearing are not a forum for raising new arguments for the first time. (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1013 ["'It is a fundamental rule of appellate practice that an appellate court need not consider issues raised for the first time by a petition for rehearing'"]; *EpicentRx, Inc. v. Superior Court* (2023) 95 Cal.App.5th 890, 909 ["'[a] petition for rehearing is not a place to raise any argument . . . for the first time'"].)

The plethora of arguments presented in Robles's petition for rehearing nevertheless distill down into three new arguments, each of which fundamentally misunderstands the law, the undisputed facts in this case, or both. First, Robles asserts that the City's fraud claim was untimely because the City did not meet the heightened pleading standard for fraud claims. This assertion is frivolous because the quality of *pleading* has no bearing whatsoever to an *evidence-based* motion like summary judgment. (E.g., *Rodes v. Shannon* (1961) 194 Cal.App.2d 743, 746 ["'the sufficiency of the pleadings cannot be reviewed on appeal from a

2

summary judgment'"].) Second, Robles contends that he was not hired as deputy city manager with a written employment agreement until May 2002, that the Espinoza-arranged contracts underlying the City's claims were all signed in the fall of 2001 when he was merely the City treasurer who worked without a written employment agreement, and that the City's fraud, breach of fiduciary duty, and breach of contract claims are accordingly all untimely because they are subject to the shorter limitations periods prescribed for oral contracts. These contentions are also without merit. To begin, the City's fraud claim is not contingent upon Robles's employment in any capacity. The fraud claim is premised on Robles's use of his unofficial influence over a majority of the councilmembers to convince the City to grant contracts to contractors who use Espinoza as a consultant, and on Espinoza's conduct in subsequently funneling money paid to him with City funds (either directly by the City or indirectly through the contractors) to Robles; the fraud arose because the City was getting *nothing of value* from the portion of its money paid to Robles as kickbacks. Robles's official status is irrelevant to this fraud scheme. The City's breach of fiduciary duty and breach of contract claims are also subject to the longer limitations period for written contracts because no matter when the Espinoza-arranged contracts with the City were *signed*, the City was not *damaged* until Robles received his kickbacks of City

3

funds, and some of those funds were paid after Robles became deputy city manager.  Lastly, Robles argues that as city treasurer he had no "official" decision-making power and performed wholly "ministerial" tasks.  We also reject this argument:  The fact that Robles's illegal kickback scheme was outside of his official, ministerial duties is neither a surprise nor a defense that would empower Robles to keep his ill-gotten gains.

2.  In the second paragraph of the inserted text outlined above, after the third-to-last sentence ending "some of those funds were paid after Robles became deputy city manager," insert footnote 7 as follows (and renumber subsequent footnotes accordingly):

> [7]     To the extent Robles suggests in his petition for rehearing that the statute of limitations on all of these claims began to run the moment the City signed the Espinoza-arranged contracts, that suggestion contradicts Robles's earlier concession in this appeal that the statute of limitations did not begin to run until he was federally indicted, which was the point at which the City first discovered Robles's subterfuge.

*     *     *

4

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____

ASHMANN-GERST, Acting P. J.   CHAVEZ, J.   HOFFSTADT, J.

Filed 8/1/24  City of South Gate v. Robles CA2/2 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CITY OF SOUTH GATE,<br><br>Respondent,<br><br>v.<br><br>ALBERT T. ROBLES,<br><br>Appellant. | B325897<br><br>(Los Angeles County<br>Super. Ct. No. BC334843) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Olivia Rosales, Judge.  Affirmed.

Albert T. Robles, in pro. per., for Appellant.

Gordon Rees Scully Mansukhani, Don Willenburg and Andrea K. Williams for Respondent.

Albert Robles (Robles) exploited his position as an elected city official and city employee to direct city funds to certain companies and individuals, from whom he extracted kickbacks for his "services." After he was prosecuted federally for these acts, the city sued Robles civilly to recover the amount of money he extracted from the city as kickbacks. The trial court granted the city summary judgment on four of its claims, and entered judgment for over $4 million. Robles challenges the judgment on several grounds. Because they all lack merit, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

#### A. *Robles takes control of city bidding process*

Robles was a political fixture within the City of South Gate (the City) for many years. He served as an elected member of the five-member city council from 1992 to 1997, including a stint as mayor during that period. Robles was elected as the City's treasurer in 1997, and the voters reelected him to that position in 2001. In May 2002, the City also hired Robles to work as a deputy city manager. His position as deputy city manager was governed by a written employment agreement.

#### B. *Robles receives kickbacks*

In the mid-1990s, Robles concocted several schemes to make money using his influence over City politics.

One of the schemes involved Edward Espinoza (Espinoza), a New Jersey-based financial and political consultant.[1] It worked

---

1 This was not the only scheme. Robles also received kickback payments from a different consultant who, after receiving money from companies who won City contracts, would

like this: (1) Robles would convince companies who wanted contracts with the City to hire Espinoza as a consultant; (2) Robles would use his influence as an elected city official and city employee to ensure that the City accepted bids from the companies who hired Espinoza; (3) the City would pay those companies the bid price; (4) the companies would pay Espinoza's consultant fees—including for consulting work he never performed—from the fees they received from the City; and (5) Espinoza would "funnel" the majority of his consultant fees to Robles or to companies or individuals Robles specified.

Through this scheme, Robles obtained $2,022,588 of City funds. Specifically:

–      Robles used his influence to obtain City approval of a housing project for a developer who hired Espinoza as a consultant. The City paid the developer approximately $24 million, from which the developer paid Espinoza $1,825,000, for consulting fees, of which Espinoza thereafter funneled Robles, his family, and his friends $1,242,588.

–      Robles also used his influence to obtain City approvals on a sewage project and a parking lot project for companies and individuals who hired Espinoza as a consultant. The City paid those developers, who paid Espinoza, who subsequently funneled a total of $780,000 to Robles, his relatives, and his friends.

C.      ***Robles is removed from office and prosecuted***

In January 2003, voters in the City recalled Robles from elected office.

---

funnel money to Robles. One of those consultants made $437,500 in unreported campaign contributions to Robles.

3

In June 2003, the City terminated Robles's employment as deputy city manager, citing the "numerous egregious acts" he committed and the "gross neglect of his fiduciary responsibilities" that resulted in "a significant breach of public trust."

Also in June 2003, a grand jury indicted Robles for this public corruption. In July 2005, a jury found Robles guilty of 21 counts of honest services mail and wire fraud based on his failure to disclose financial conflicts of interest, four counts of money laundering, and five counts of bribery. He was sentenced to 10 years in federal prison.

Espinoza pleaded guilty to his role in the scheme.

**D.** *Many of Robles's convictions are reversed for resting on a legally invalid theory*

While Robles was directly appealing his convictions, the United States Supreme Court ruled that the crime of honest services fraud could no longer be based on a public official's failure to disclose a conflict of interest. (*Skilling v. United States* (2010) 561 U.S. 358.) Because the "jury instructions[] and the closing arguments at [Robles's] trial were permeated with the [recently] prohibited failure to disclose theory," the Ninth Circuit Court of Appeals issued an opinion in April 2013 reversing the subset of Robles's convictions that were based on that now-invalid theory; his convictions on the still-valid theory of bribery were affirmed. (*United States v. Garrido* (2013) 713 F.3d 985.)

**II. Procedural Background**

**A.** *Robles's complaint*

On June 10, 2005, Robles sued the City for wrongful termination from his post as deputy city manager. In 2007, the trial court granted summary judgment for the City on Robles's

4

employment-related claims.  That judgment is not at issue in this appeal.

### B.    *The City's cross-complaint*

On January 12, 2006, the City filed a cross-complaint against Robles alleging claims for (1) breach of Government Code section 1090, which prohibits public officials from having a financial interest in any contract made in their official capacity; (2) breach of fiduciary duty; (3) breach of Labor Code section 2860, which prohibits employees from retaining anything acquired by virtue of their employment except their wages; (4) fraud; (5) breach of Robles's employment agreement; (6) unjust enrichment; and (7) declaratory relief.

### C.    *Summary judgment/adjudication*

Due to the pendency of Robles's criminal case and sentence, during which time discovery was largely stymied due to Robles's ability to invoke his right against self-incrimination, the City's cross-complaint remained in abeyance for many years.

#### 1.    *Motion and initial ruling*

In June 2021, the City moved for summary judgment on the claims in its cross-complaint.  Attached to the City's motion was a detailed declaration from Espinoza recounting Robles's scheme.

Robles did not file a written opposition to the summary judgment motion.  Instead, he appeared in propria persona at the September 2021 hearing and orally requested a continuance due to a "severe mental health crisis."  The trial court denied the request because Robles "could not articulate any facts that would create a triable issue" if he were given an opportunity to file an opposition.  The court granted the City's motion and entered judgment for the City on its cross-complaint in November 2021.

5

## 2. *Robles's new trial motion, additional briefing, and operative ruling*

After hiring a lawyer, Robles filed a motion for a new trial, asking the court to vacate the judgment and allow him to oppose the motion for summary judgment. Following further briefing and a hearing, the trial court granted Robles's motion so the court could "issue a substantive ruling, on the merits" of the City's summary judgment motion. The court vacated the judgment for the City, vacated the initial order granting summary judgment, and placed that motion back on calendar.[2]

Robles filed his opposition to the summary judgment motion. His chief argument was that the City's claims were time-barred. He did not file any declaration or other evidence contesting Espinoza's recounting of events.

Following further briefing and another hearing, the trial court issued a new ruling in March 2022 denying in part and granting in part the City's motion. The court denied summary adjudication of the City's claim under Government Code section 1090, finding "triable issues of material fact" regarding whether that claim was barred by the applicable one-year statute of limitations. The court also denied summary adjudication of the City's unjust enrichment and declaratory relief claims, noting that the City had failed to "substantively address[]" those claims in its motion. However, the court granted summary adjudication of the City's remaining claims—for breach of fiduciary duty, breach of Labor Code section 2860, fraud, and breach of contract—because (1) they all "sound[ed] in fraud" and thus were

---

2 The City had moved to amend that judgment to include a provision setting forth a damages award, but withdrew its motion once the trial court reopened the briefing on summary judgment.

6

not barred by the applicable three-year statute of limitations, and (2) Robles "failed to submit sufficient evidence" to raise a triable issue on liability for those claims or for damages.

    3.    *Post-summary adjudication briefing on damages*

The City dismissed the three claims on which summary adjudication had been denied, and filed a motion for entry of judgment with an award of damages on its successful claims. Robles asserted for the first time that the City's damages were "unsupported, overlap[ped], [were] duplicative, and would result in a double recovery."

The trial court again indulged Robles's belated attack on the propriety of summary judgment, and sua sponte reconsidered its order granting summary judgment on "the limited issue" of damages. The parties filed supplemental briefs regarding damages as ordered by the court.

In September 2022, the trial court ruled that its March 2022 summary judgment order "will stand." Alternatively, the court ruled that, even if the court were to reconsider that order, "Robles [had] failed to submit any admissible evidence" challenging the City's damages calculations. The court awarded the City $1,704,268.84, representing the total amount Espinoza funneled to Robles and those people or entities specified by Robles from the City's contract payments less $318,319.16 of payments the City had been refunded.

    **D.    *Appeal***

After judgment was entered for the City in the amount of $4,550,146.24 (which added in accrued prejudgment interest), Robles filed this timely appeal.

7

## DISCUSSION

Robles argues that the trial court erred in granting summary adjudication to the City on its claims for breach of fiduciary duty, breach of Labor Code section 2860, fraud, and breach of the employment agreement because (1) those claims are barred by the statute of limitations, and (2) there are triable issues of material fact as to liability and damages.

Like summary judgment, summary adjudication is appropriate when the moving party shows "[it] is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c); *State of California v. Continental Ins. Co.* (2017) 15 Cal.App.5th 1017, 1031 [summary adjudication is "'procedurally identical to [a] motion[] for summary judgment'"].) When the moving party is the plaintiff (or, here, the cross-complainant), the plaintiff must establish proof as to "each element of [its] cause of action." (Code Civ. Proc., § 437c, subd. (p)(1).) The burden then shifts to the nonmoving party to show that a "triable issue of one or more material facts exists as to" any of those elements or as to any defense (*ibid.*; *Oldcastle Precast, Inc. v. Lumbermens Mutual Casualty Co.* (2009) 170 Cal.App.4th 554, 564). Summary adjudication should be denied only when there are "genuine" or "triable" issues of fact to be resolved at trial—that is, when "the evidence would allow a reasonable trier of fact to find . . . in favor of the party opposing the [summary adjudication] motion." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 860, citing *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845; Code Civ. Proc., § 437c, subds. (c), (o) & (p).)

In applying this standard, we independently review the evidence before the trial court except the evidence to which an objection was made and sustained (and when that evidentiary

8

ruling is not challenged on appeal),[3] and we review that evidence in the light most favorable to the nonmoving party, "resolving . . . any doubts" against summary adjudication. (*Salas v. Sierra Chemical Co.* (2014) 59 Cal.4th 407, 415; *Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1113.) Because the propriety of summary adjudication is a question of law, our review is de novo and we may affirm on any ground regardless of whether the trial court relied on that ground. (*Burgueno v. Regents of University of California* (2015) 243 Cal.App.4th 1052, 1057; *Long Beach Memorial Medical Center v. Kaiser Foundation Health Plan, Inc.* (2021) 71 Cal.App.5th 323, 336.)

## I. Statute of Limitations Bar[4]

We independently conclude that the undisputed facts establish that the City's cross-claims were timely filed. (See *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 [statute of limitations ordinarily a question of fact unless "the

---

[3] Although Robles filed objections to the City's evidence, the trial court overruled those objections, and Robles's attack on the trial court's evidentiary rulings in his appellate briefs is cursory and contains no legal analysis whatsoever. We accordingly deem this attack on the trial court's evidentiary rulings waived. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956; Cal. Rules of Court, rule 8.204(a)(1)(B).)

[4] Because we elect to address Robles's arguments regarding the statute of limitations on their merits, we have no occasion to address the City's antecedent argument that Robles waived any statute of limitations defense by not raising any statute in particular in his initial answer and by citing only one statute when raising the defense in his amended answer after the summary judgment motion was filed.

9

uncontradicted facts . . . are susceptible of only one legitimate inference"].)

The four cross-claims at issue are governed by a three- or four-year statute of limitations for two reasons.  First, the gravamen of the City's four claims sounds in fraud, and claims grounded in fraud—even if they are not labeled as fraud claims—have a three-year statute of limitations.  (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22-23 ["gravamen," rather than form or relief demanded, is key when assessing applicable statute of limitations]; *Vera v. REL-BC, LLC* (2021) 66 Cal.App.5th 57, 66 [fraud limitations period "'applie[s] to any form of action, for any kind of relief . . . regardless of whether the complaint seeks legal or equitable relief or pleads a cause of action in tort or contract'"]; *Thomson v. Canyon* (2011) 198 Cal.App.4th 594, 606-607 [same].)  Second, even if we look to the *label* of the City's claims rather than their gravamen, the limitations periods for each claim is either three or four years.  (*American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1479 [three or four years for breach of fiduciary duty depending on whether breach is contractual or fraudulent]; Code Civ. Proc., §§ 343 [residual four years for violation of Labor Code section 2860], 338, subd. (d) [three years for fraud], 337 [four years for breach of written employment agreement].)

Because the parties do not meaningfully dispute that the City's cross-claims accrued when Robles was federally indicted in June 2003, and because it is undisputed that those cross-claims were filed in January 2006,[5] the City's cross-claims were timely filed under either limitations period.

---

[5]     Because we rely on the date the City filed its cross-complaint, we need not consider the City's arguments that its

10

Robles resists this conclusion with what boils down to two arguments.

First, he argues that all of the City's claims are subject to the one-year statute of limitations governing a claim under Government Code section 1090. Specifically, Robles urges that (1) a violation of Government Code section 1090—which is premised on a public official's involvement in transactions in which he has a financial interest—has a one-year statute of limitations when the remedy sought is a voiding or "forfeiture" of the unlawful transaction (*Brandenburg v. Eureka Redevelopment Agency* (2007) 152 Cal.App.4th 1350, 1364-1365; Code Civ. Proc., § 340, subd. (a)); (2) the City's four successful claims—while not claims under Government Code section 1090—are nevertheless all "rooted" in the same nucleus of facts as the City's now-dismissed section 1090 claim; such that (3) section 1090's one-year limitations period must apply to all of the City's similarly rooted claims.

We reject this argument for several reasons. To begin, it is factually inapt. The City is not seeking in its cross-claims on which it was granted summary judgment a "forfeiture" or voiding of the transactions in which Robles was involved; instead, the City is seeking damages representing the amount that the City paid and Robles personally pocketed. Further, Robles's argument is unsupported by the law. Robles cites no authority for the proposition that courts faced with a multitude of claims with different elements and different limitations periods must apply the shortest limitations period to *all* of them if they rest on the same nucleus of facts. What is more, Robles's argument is

cross-claims relate back to Robles's filing of his complaint in June 2005.

11

unsupported by logic: If his proffered "apply the shortest limitations period" rule applies only when a party at some point in a case alleges a claim with that limitations period (even if that claim is later dismissed), then litigants will never allege claims with such short fuses (thereby nullifying our Legislature's intent that such claims be available); but if his proffered rule applies even when a claim is never alleged, then trial courts will be tasked with scouring the statutory code books looking for possible claims with short limitations periods that could have been brought under the same nucleus of facts alleged in a complaint.

Second, Robles argues more specifically that the City's Labor Code section 2860 claim is barred by the two-year statute of limitations in Code of Civil Procedure section 339, subdivision (1). He is wrong. This statute deems "[e]verything . . . an employee acquires by virtue of his employment" beyond wages to "belong[] to the employer," thereby establishing a duty of loyalty owed by the employee that "must be read into every employment relationship." (Lab. Code, § 2860; *Lugosi v. Universal Pictures* (1979) 25 Cal.3d 813, 826, superseded by statute as stated in *Timed Out, LLC v. Youabian, Inc.* (2014) 229 Cal.App.4th 1001, 1008.) Because the City's Labor Code section 2860 claim seeks relief based "upon a liability created by statute" and does not seek forfeiture of the entirety of Robles's compensation as an employee, a three-year limitations period applies. (Code Civ. Proc., § 338, subd. (a).) Robles's responds that *General Electric Co. v. Wilkins* (E.D.Cal. Aug. 31, 2012, No. CV F 10-0674 LJO JLT) 2012 U.S. Dist. Lexis 124642, *46, states that "[t]he applicable statute of limitations on an action brought pursuant to . . . Labor Code section 2860 is two years pursuant to . . . Civil Procedure Code 339(1)," but *Wilkins* is not binding upon us,

12

provides no authority or analysis for its assertion, and cites to a provision governing actions based upon "liability not founded upon an instrument of writing" (Code Civ. Proc., § 339, subd. (1)) when the liability here is grounded in statute and incorporated into a written employment contract.[6]

## II.     Grant of Summary Adjudication

As to both liability and damages, we independently conclude that the City was entitled to judgment as a matter of law on its cross-claims.

### A.     *Liability*

The four cross-claims at issue in this case—breach of fiduciary duty, breach of Labor Code section 2860, fraud, and breach of the employment agreement—all rest on Robles's years-long scheme to circuitously extract kickbacks from contractors in exchange for using his influence to have the City award those contractors contracts with the City.  In support of its claims, the City submitted declarations from Espinoza and two City managers, as well as supporting documentation—all substantiating the scheme and the amounts Robles received as recompense for his exertion of influence.  (See *Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 410 [applying breach of duty of loyalty, as analogous to breach of fiduciary duty, to Labor Code section 2860 claim].)  Robles did not contest any of this evidence in opposition to summary adjudication.  As a result, the City's undisputed evidence established the elements of its four cross-

---

[6]     Even if the Labor Code section 2860 claim were time-barred, this would not affect the judgment as to the City's other three cross-claims, which are independently sufficient to sustain the damages award.

claims and summary adjudication of those claims was appropriate.

Robles responds with what we have grouped into three arguments.[7]

First, he argues that the Ninth Circuit's act of overturning most of the federal criminal charges against him mandates dismissal of the City's cross-claims. We reject Robles's attempt to equate apples and oranges. The Ninth Circuit vacated Robles's convictions because the pertinent *federal criminal law* did not proscribe honest services fraud on the basis of undisclosed conflicts of interest. However, the City's cross-claims are not based on federal criminal law, and hence are not subject to its limitations. Instead, the City's cross-claims are based on breach of fiduciary duty, breach of Labor Code section 2860, fraud, and breach of the employment agreement under California law. Thus, the dismissal of Robles's federal charges does not involve the identical claims or issues, and does not have the quasi-collateral estoppel effect Robles asserts. (Accord, *Boeken v. Philip*

---

[7] For the first time in his reply brief on appeal, Robles makes a fourth argument that the Labor Code section 2860 claim is not viable because Robles was not acting in his "official capacity." By waiting until his reply brief to raise this issue, Robles has waived it. (*People v. Tully* (2012) 54 Cal.4th 952, 1075.) This assertion is contradicted by the undisputed evidence in the record in any event.

For the first time at oral argument, Robles made a fifth argument that he cannot be civilly liable for the kickback scheme because his attempts to use his unofficial influence to personally profit were outside his official duties. The officiality of Robles's duties is not a defense to any of the claims on which the City was granted summary judgment.

*Morris USA, Inc.* (2010) 48 Cal.4th 788, 797 [discussing elements of res judicata and collateral estoppel].)

Second, Robles argues that the grant of summary adjudication was improper because the City's motion was "pegged solely" on Espinoza's declaration, because Espinoza's recounting of the facts was "uncorroborated," and because his recounting was not credible and could be contradicted.[8]

These arguments misunderstand the facts and the applicable law. Robles's assertion that Espinoza's declaration was the *sole* evidence submitted by the City is factually inaccurate, as the City also submitted two other declarations from City managers as well as documentation. Robles's challenge to Espinoza's declaration is legally untenable. Contrary to what Robles asserts, "direct evidence of one witness . . . is sufficient for proof of any fact," including on summary judgment; corroboration is not generally required. (Evid. Code, § 411; Code Civ. Proc., § 437c, subd. (e).) Although there is an exception to this rule "if the only proof of a material fact . . . is a[] declaration made by an individual who was the sole witness to that fact" (Code Civ. Proc., § 437c, subd. (e)), Espinoza was not the "sole witness" to Robles's kickback scheme because *Robles* was also a witness to that scheme. Yet Robles elected not to submit an opposing declaration. Robles's efforts in his briefs on appeal to criticize the content of Espinoza's declaration or Espinoza's credibility

---

8    At oral argument, Robles argued that Espinoza's declaration was inadmissible hearsay. He is wrong. Declarations submitted in support of a summary judgment are not hearsay (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 541), and references to Robles's statements in Espinosa's declaration are admissible as the statements of a party opponent.

15

(because Espinoza is a "felon") are not "evidence" and hence cannot create a triable issue of material fact. (*Kerns v. CSE Ins. Group* (2003) 106 Cal.App.4th 368, 396 ["weighing of conflicting evidence . . . is a process which can never take place in the context of a summary judgment motion"]; *People v. Prunty* (2015) 62 Cal.4th 59, 89 [conc. & dis. opn. of Cantil-Sakauye, C. J. [credited testimony may be rejected only if it was ""physically impossible or inherently improbable""]].) As far as our review goes, Espinoza's declaration is credible and undisputed. Robles nevertheless cites *Featherstone v. Southern Cal. Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1159, and Evidence Code section 412 to assert that corroboration is required. He is wrong. *Featherstone* addressed how to prove discriminatory motive through shifting burdens of proof, which is irrelevant here. Evidence Code section 412 provides that evidence should be "viewed with distrust" if "stronger and more satisfactory evidence" is available; it does not stand for the proposition that corroboration is always required, for such a proposition would nullify Evidence Code section 411.

Third, Robles argues that there are triable issues of fact as to whether he violated Government Code section 1090. This argument is irrelevant because the City's cross-claim under this statute was dismissed after the trial court *denied* summary adjudication on it.

**B.    *Damages***

As part of its motion for summary adjudication, the City presented evidence—which Robles did not contest—that $2,022,588 of the money it paid to various City contractors ultimately ended up in Robles's pocket, despite Robles not granting the City anything in exchange for that money. This

16

amount—less the $318,319.16 the City was able to recover—accordingly represents "the amount of damages actually caused by [Robles's] fraud, misrepresentation, conversion or breach of fiduciary duty." (*Siry Investment, L.P. v. Farkhondehpour* (2020) 45 Cal.App.5th 1098, 1135, revd. in part on other grounds by *Siry Investment, L.P. v. Farkhondehpour* (2022) 13 Cal.5th 333.)

Robles resists this conclusion with five arguments.

First, he argues that the City never proved actual harm, loss, or damages. He is wrong. As explained above, the City established that, through his intermediary Espinoza, Robles siphoned off a portion of the contract funds the City paid to contractors despite Robles providing nothing to the City in exchange for those funds. But for Robles's kickback scheme, he would not have received $1,704,268.84 in City money. (See *United States v. Gaytan* (9th Cir. 2003) 342 F.3d 1010, 1012 & fn. 3 ["bribe money" belongs to local government, and so long as defendant keeps it, the local government "suffers an actual loss"].)

Second, Robles argues that the damages award is impermissible because it constitutes "restitution" as well as a "forfeiture" under the time-barred Government Code section 1090 claim. Again, he is wrong. We reject Robles's attempt to invalidate the award by assigning different labels to it; no matter what label is used, the amount awarded represents what Robles took from the City while giving nothing in exchange, and *that* amount is validly awarded as damages. There was no forfeiture under Government Code section 1090 in any event because the court did not invalidate the contracts; the City was awarded damages representing the amount *Robles* profited by taking the City's funds.

17

Third, Robles argues that the City failed to prove that he personally benefitted from the scheme. This is irrelevant, because the pertinent measure of damages is the City's loss, not Robles's personal gain. Further, this argument ignores the undisputed evidence before the trial court supporting the finding that Robles also personally gained by the amount he siphoned from the City.

Fourth, Robles argues that the City is not entitled to any damages on its Labor Code section 2860 claim because (1) Robles did not "acquire[]" any City funds from the contracts he facilitated, and (2) the City's sole remedy for violations of that provision is an accounting. As to the first sub-argument, Robles's execution of his scheme while serving as an elected treasurer and employed deputy city manager fits squarely within the scope of Labor Code section 2860's prohibition against an "employee acquir[ing]" anything "lawfully or unlawfully" "by virtue of his employment." (Lab. Code, § 2860.) More to the point, Robles ended up with close to $2 million in City funds that he should not have received. As to the second sub-argument, an accounting is one remedy for violating that prohibition; it is not the *only* remedy. (*Id.*, § 2861.)

Fifth and lastly, Robles argues that there are triable issues regarding the City's claim for punitive damages. This argument is irrelevant because the City was not awarded punitive damages.

## DISPOSITION

The judgment is affirmed.  The City is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
HOFFSTADT

We concur:

_____, Acting P. J.
ASHMANN-GERST

_____, J.
CHAVEZ